# STATE OF MICHIGAN

# COURT OF APPEALS

In re H. TITUS, Minor.

UNPUBLISHED
April 23, 2015

No. 323439
Calhoun Circuit Court
Family Division
LC No. 2013-000599-NA

Before: O'CONNELL, P.J., and FORT HOOD and GADOLA, JJ.

PER CURIAM.

Respondent-mother appeals as of right an August 20, 2014 order terminating her parental rights to the child, HT, pursuant to MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). We affirm.

Respondent first argues that the trial court clearly erred in finding that a statutory ground for termination was proven by clear and convincing evidence. We disagree. "To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). "We review for clear error a trial court's finding of whether a statutory ground for termination has been proven by clear and convincing evidence." *Id.*; see also MCR 3.977(K). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Laster*, 303 Mich App 485, 491; 845 NW2d 540 (2013) (citation omitted).

MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j) permit termination under the following circumstances:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . .

-1-

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

HT was born on February 20, 2013. He was born with illegal substances his system, and was removed from respondent's care. Throughout the proceedings, respondent's drug use was a continuing concern. Respondent was ordered to submit to substance screenings and individual and group substance abuse therapy, but she missed numerous screenings, continuously tested positive for prescription medication, and did not complete substance abuse therapy until the end of July 2014. Even after completing services, there continued to be concerns about respondent's use of prescription medication and she continued to use prescription medication at the time of termination. Respondent's counselor did not believe respondent had fully addressed her substance abuse issues and her psychological evaluation indicated a poor prognosis in regard to her substance abuse. At the termination hearing, respondent failed to acknowledge her 33 missed drug screens or take responsibility.

In addition, respondent continued to reside with HT's legal father, despite his drug use and domestic violence. During the proceeding, HT's father either tested positive for substances or failed to report for drug screenings a total of 42 times. When he did submit to screenings, he tested positive for marijuana and cocaine, and on one occasion he overdosed on heroin. There were also concerns that domestic violence was occurring in the home that respondent shared with HT's father. The month before termination, it was reported that HT's father was attending domestic violence therapy but had "a long way to go" before reaching his goals. Despite the concerns regarding domestic violence, respondent continued to be in a relationship with HT's father until the weeks leading up to termination. Respondent's domestic violence counselor did not believe that she had made progress. Further, at the time of termination, respondent lacked stable, appropriate housing and did not have the financial means to care for HT because she only

possessed a part-time job where she earned $160 each week. Respondent admitted that she was unable to care for HT until she was admitted into a program that would help her locate housing and employment.

The trial court did not clearly err in terminating respondent's parental rights. The proceedings lasted 18 months, and at the time of termination, there continued to be serious concerns regarding respondent and she was unable to independently provide for HT. The trial court did not clearly err in finding that the condition that led to adjudication, drug abuse, along with other conditions, including domestic violence, lack of regular income, and lack of stable housing, continued to exist and would not be rectified within a reasonable time. MCL 712A.19b(3)(c)(*i*), (c)(*ii*). In addition, the evidence showed that respondent was unable to provide proper care and custody for HT, and the trial court did not err in its conclusion that, given respondent's failure to make progress over the course of the proceedings, respondent would be unable to provide proper care and custody within a reasonable time considering HT's age. MCL 712A.19b(3)(g). Finally, the trial court did not clearly err in finding that there was a reasonable likelihood of harm to HT if he were returned to respondent. MCL 712A.19b(3)(j). The harm to the child contemplated under MCL 712A.19b(3)(j) includes emotional harm as well as physical harm. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). Based on respondent's failure to rectify problems with substance abuse, including belated treatment efforts and missed screenings, her lack of proper housing and income, and failure to benefit from domestic violence counseling, along with her continued relationship with HT's father, the trial court's holding that there was a reasonable likelihood of harm to HT was not clearly erroneous.

Respondent asserts on appeal that she was able to properly parent HT because EE, her older child, remained in her care during the proceeding. However, the record shows that EE was removed from her care and placed with his legal father in April 2014. In addition, we reject respondent's assertion that reasonable efforts were not made to rectify the barriers to reunification. "When a child is removed from a parent's custody, the agency charged with the care of the child is [usually] required to report to the trial court the efforts made to rectify the conditions that led to the removal of the child." *In re Plump*, 294 Mich App 270, 272; 817 NW2d 119 (2011). A trial court is not required to terminate parental rights if the State "has not provided the child's family… with the services the state considers necessary for the child's safe return to his or her home, if reasonable efforts are required." MCL 712A.19a(6)(c); See *In re Rood*, 483 Mich 73, 104 n 46; 763 NW2d 587 (2009). "The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich at 89. Respondent claims that petitioner failed to provide her assistance with locating housing and employment and with acquiring financial assistance from the State. However, the record shows that respondent was provided with assistance in obtaining employment. In regard to housing assistance, the record reveals that two days before the termination hearing, respondent applied to the Inasmuchas housing program. Respondent claims that the agency should have provided her with assistance with gaining access to the Inasmuchas program; however, there is no indication that mother requested such assistance or that the agency could have hastened the process. Moreover, the record supports that it was because respondent waited until two days before the termination hearing to contact someone from the Inasmuchas program that she was still waiting to gain entry into the program. Thus, the record does not support that respondent lacked suitable housing at the time of termination because of the

-3-

agency's failure to make reasonable efforts; rather, it was because of respondent's poor decision-making skills and belated efforts.

Respondent next argues that termination of her parental rights was not in HT's best interests. Once a statutory ground for termination is established, the trial court shall order termination of parental rights if it finds by a preponderance of the evidence that termination is in the child's best interests. MCL 712A.19b(5); *In re Moss*, 301 Mich App at 90. The trial court's best-interest decision is also reviewed for clear error. MCR 3.977(K); *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (internal citations omitted).

Although the record supports that respondent and HT were bonded, it does not support that it was a typical parent-child bond. See *id.* HT had been out of respondent's care for virtually all of his life because respondent consumed prescription medication and marijuana during her pregnancy. HT was placed with relatives after he was released from the hospital after his birth, and he had been placed with them for almost 18 months at the time of termination. HT was bonded to his caregivers, and he only saw respondent twice each week for most of the proceeding. At times during parenting time, respondent was very tired, not "hands on," and failed to interact with HT. Although respondent argues that HT was more bonded with the relative caregivers because he was removed from her care and she was only provided with limited parenting time, the record establishes that this was the result of respondent's conduct and failure to make progress during the proceeding.

Respondent also claims that she had appropriate parenting abilities, as evidenced by the fact that she provided care to EE during the proceeding. As already stated, EE was removed from respondent's care in April 2014 and placed with his legal father. There is no evidence that EE returned to respondent's care, and there is no indication that respondent would be able to properly parent HT within a reasonable time in the future given her failure to make progress during the proceeding and her inability to care for HT's basic needs at the time of termination. HT required permanency and stability. He was thriving in the care of the relative caretakers and was on track developmentally at the time of termination. The relatives were interested in adopting HT, and he was bonded to them. See *In re VanDalen*, 293 Mich App 120, 141; 809 NW2d 412 (2011) (holding that termination was in the child's best interests where the foster care home could provide stability and permanency). The trial court did not clearly err in finding that termination of respondent's parental rights was in HT's best interests. *In re Trejo*, 462 Mich at 356-357.

Affirmed.

/s/ Peter D. O'Connell
/s/ Karen M. Fort Hood
/s/ Michael F. Gadola