# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
October 6, 2015

*In re* MCKENZIE, Minors.

No. 325938
Monroe Circuit Court
Family Division
LC No. 13-022891-NA

Before: K. F. KELLY, P.J., and CAVANAGH and SAAD, JJ.

PER CURIAM.

Respondent appeals the trial court's termination of her parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j). For the reasons stated below, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

Respondent is the mother of the two children involved in this proceeding, MM and JM.[1] The Department of Health and Human Services ("the Department") filed a petition to take temporary custody over the children in February 2013, after MM was taken to the hospital and found to have (1) unexplained bruising on her face, arm, leg, and back, (2) a head wound, and (3) a rash on her vagina.

At a preliminary hearing on the allegations made by the Department, respondent admitted to the most of the facts contained in the petition, and stated that she could not explain MM's injuries. The trial court took jurisdiction over the children soon thereafter, and instituted a case plan to assist respondent in retaining her parental rights. In the meantime, the children were placed in foster care with respondent's cousin and his wife.

Over the next year, the state provided respondent with therapy, counseling, and classes to improve her parenting abilities. Though respondent attended therapy and parenting classes, her

---

[1] The record indicates that both JM and MM are "high needs" or "very high needs" children, and that JM has a developmental disorder. MM is now 6 years old; JM is 3 years old. The children do not have the same father. Neither father is involved in this appeal, as both men have released their parental rights to the children.

parenting skills did not improve, because of her own mental problems—respondent is cognitively impaired, and suffers from severe depression and bipolar disorder—and sometimes uncooperative attitude.

During supervised parenting visits, respondent's parenting skills appeared almost non-existent. She required prompting from the caseworker or foster parents on how and when to feed, play with, and discipline the children. She also neglected MM and JM by allowing them to wander off into areas that posed safety hazards to young children, in both the home and public places.[2] Respondent failed to attend the children's medical appointments, frequently argued with and yelled at MM, and gave soda to JM, despite the fact that soda had caused him severe tooth decay. More disturbingly, respondent's personal hygiene deteriorated over the course of the year, and the children contracted head lice on 11 separate occasions after spending time in her care. She also did not recognize when the children had medical problems and needed to receive medical care. In sum, respondent was unable to parent the children without active assistance from others.

In a similar vein, respondent failed to change her own living arrangements to protect and nurture her children. Though state assistance enabled her to secure adequate housing, she permitted her mother, who has substance abuse problems, and JM's father, who has severe mental illness and recently suffered a psychotic break, to live with her, which resulted in a chaotic home environment. She also often forgot to take her medicine for her depression and bipolarity, and went without it if she could not afford it.

Because of respondent's lack of progress in improving her parenting skills, the Department requested termination of her parental rights in October 2014. The trial court held a hearing on the matter in January 2015, and heard testimony from the primary social worker involved in the case, the children's guardian ad litem,[3] respondent, and the children's foster mother. The social worker recommended that the court terminate respondent's parental rights, and noted that the children were "thriving" in foster care. The court agreed with the social worker's recommendations, terminated respondent's parental rights pursuant to MCL 712.19b(3)(c)(i), (g), and (j), and held that termination was in the children's best interests.

On appeal, respondent says that the trial court erred when it: (1) terminated her parental rights under the aforementioned statutory subsections; and (2) held that termination was in the children's best interests.[4] The Department asks us to uphold the ruling of the trial court.

---

[2] Specifically, she allowed JM to go into the kitchen unsupervised, where he fell and cut his lip, and permitted JM to wander in and around a hospital elevator by himself.

[3] The guardian ad litem testified at an adjourned termination hearing that occurred in December 2014.

[4] Respondent also has a poorly written section in her brief that recounts the fact that the children were placed in foster care with her cousin. An appellant "may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give

## II. STANDARD OF REVIEW

"We review for clear error a trial court's finding of whether a statutory ground for termination has been proven by clear and convincing evidence." *In re Moss,* 301 Mich App 76, 80; 836 NW2d 182 (2013). Likewise, a trial court's finding that termination of parental rights is in a child's best interests is reviewed for clear error. *In re Laster,* 303 Mich App 485, 496; 845 NW2d 540 (2013).

## III. ANALYSIS

## A. STATUTORY GROUNDS FOR TERMINATION

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App at 80. In relevant part, MCL 712A.19b(3) permits the termination of parental rights when:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (i) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> \* \* \*

> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> \* \* \*

---

only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

It is unclear what argument, if any, respondent attempts to make with these assertions. If we choose to make respondent's argument for her—again, something that we are not required to do—we assume that she believes the trial court did not properly consider the fact that the children were placed with a "relative" when it terminated her parental rights. Such action warrants remand in certain circumstances. *In re Mason*, 486 Mich 142, 163-164; 782 NW2d 747 (2010). However, if respondent is making such a claim, it is flatly contradicted by the record. The trial court explicitly noted the fact that the child was placed with respondent's cousin before it terminated respondent's parental rights, and it accordingly satisfied the mandates of *In re Mason.*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Here, the trial court properly terminated respondent's parental rights under each of the above subsections. The "conditions that led to the adjudication" in February 2013 were respondent's: (1) poor parenting skills; (2) medical neglect of her children; (3) mental problems; (4) chaotic home life; (5) unsanitary living conditions; (5) tendency to ignore her children's whereabouts in a manner that placed them in physical danger. MCL 712A.19b(3)(c)(i). These conditions continued to exist in January 2015, when the trial court terminated respondent's parental rights, despite the state's extensive efforts to work with respondent to improve her parenting abilities.[5] *Id*. More important, there is a "reasonable likelihood" that the children would be harmed if they are returned to respondent's care, because respondent still (1) allows the children to wander off into dangerous situations, and (2) does not understand when it is necessary to take the children to receive medical care. MCL 712A.19b(3)(j).

For these reasons, and in light of the extensive amount of time the trial court gave respondent to change her behavior, "there is no reasonable expectation that [respondent] will be able to provide proper care and custody within a reasonable time considering the child's age," and the trial court correctly terminated her parental rights pursuant to MCL 712.19b(3)(c)(i), (g), and (j).

## B. THE CHILDREN'S BEST INTERESTS

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights[.]" *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012). When it assesses whether termination is in a child's best interests, a court looks to, among other things: "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. at 41-42 (citations omitted).

Here, the trial court correctly held that termination of respondent's parental rights was in JM and MM's best interests. As noted, respondent's parenting abilities remained minimal throughout the duration of the proceedings, and her neglect continued to place the children in danger. Respondent also allowed individuals who would pose a risk to the children's welfare— her mother and JM's father—to live in her home. Respondent did not have a bond with JM, as he had been in foster care for much of his life, and her bond with MM, though strong, was the

---

[5] Contrary to respondent's suggestions, the mere fact that she participated in the state-offered services is not, in and of itself, sufficient to prevent the termination of her parental rights—she must apply the skills she has learned in the parental classes in her day-to-day parenting, something she failed to do. See *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

type a child would have with a playmate, not a parent.[6]  Accordingly, the trial court, which considered the above factors, properly held that termination of respondent's parental rights was in the best interests of the children.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Mark J. Cavanagh
/s/ Henry William Saad

---

[6] Respondent unavailingly asserts that the trial court failed to separately consider JM and MM's best interests when it made its determination.  This assertion contradicts the record, because the trial court recognized and discussed the children's: (1) different developmental and medical needs; and (2) respective bonds with their mother.