# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. M. Brewer, Minor.

UNPUBLISHED
June 23, 2016

No. 329958
Wayne Circuit Court
Family Division
LC No. 14-516402-NA

Before: TALBOT, C.J., and MURRAY and SERVITTO, JJ.

PER CURIAM.

Respondent mother appeals as of right the circuit court's order terminating her parental rights to the minor child, AM, pursuant to MCL 712A.19b(3)(c)(i) and (3)(g). We affirm.

In this case, respondent had an existing case with respect to her three older children and was not in compliance with her treatment plan in that case when AM was born on July 4, 2014. The allegations concerning respondent in the open case included failure to protect a child from sexual abuse, failure to attend counseling, leaving the children in the care of others, failure to keep in contact with DHS, and leaving one of the children with an individual who physically abused her. Thus, the Department of Human Services immediately filed a petition to remove AM from respondent's care. Respondent agreed to immediately leave the home she shared with AM's father (who was not the father of her three older children) and AM was permitted to remain in the father's care and custody, with respondent having supervised visits with the child. However, AM was removed from the father's care when she was three months old, in part, because the parents refused to cooperate with Children's Protective Services (CPS) well-being check on the child. When CPS sought to check on the child's well-being, their efforts were frustrated at every attempt and CPS did not see the child for the first time until she was removed from the home. In addition, it came to the circuit court's attention that the father of the child had been permitting respondent to have unsupervised visits with the child, despite an order to the contrary. AM was placed with father's aunt in October 2014.

On respondent's admissions, the circuit court took jurisdiction over AM. A treatment plan was put into place and AM continued to be cared for by her great-aunt. An amended petition seeking termination of respondent's parental rights was eventually filed and, after an October 21, 2015 termination trial, at which respondent failed to appear, her parental rights to AM were terminated.

On appeal, respondent first contends that the circuit court erred in finding that the statutory grounds for termination had been established. "To terminate parental rights, a trial

-1-

court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). The trial court's finding that a statutory ground for termination has been proved by clear and convincing evidence is reviewed for clear error. *In re Laster*, 303 Mich App 485, 491; 845 NW2d 540 (2013); MCR 3.977(K). "A finding is clearly erroneous [if] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010)(citation and quotation marks omitted).

Respondent's parental rights were terminated under MCL 712A.19b(3)(c)(*i*) and (3)(g). The relevant provisions of MCL 712A.19b(3) provide the following:

\* \* \*

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

At the termination hearing, prior to any testimony being given, Mr. Lewis, counsel for the Department of Human Services (DHS) requested that the circuit court take judicial notice of the legal file. The legal file in this matter contains transcripts and documents pertaining to not just AM, but also her three older siblings. In some instances, a single proceeding was held to address separate matters concerning the three older children and AM because, although the three older children had the same father and that father was different than AM's father, respondent was the mother to all four children.

On August 14, 2014, a proceeding was scheduled for a bench trial concerning respondent's three older children and a pre-trial concerning AM. At that hearing, respondent admitted that she did not have adequate housing to take care of her children and had no legal source of income. Respondent further admitted that if the circuit court returned the children to her on that day, she would have no place for them to stay and no way to financially support them. While these admissions were made with respect to respondent's three older children, the circumstances would apply equally to AM. Nevertheless, the specific conditions that actually led to adjudication concerning AM, as stated in the order, were essentially that respondent had three other children over whom the circuit court had taken jurisdiction and that she was working on a case service plan in that case but had not completed it. At the time of the termination trial in

this matter on October 21, 2015, those conditions continued to exist. Respondent's three older children remained in placement with a relative foster care giver and were still in placement as of at least March of 2016. Moreover, at the time of the termination trial, respondent still had no suitable housing and no income. The conditions that led to adjudication thus continued to exist and there is no reasonable likelihood that the conditions would be rectified within a reasonable time considering that AM was a newborn when removed from respondent's care and was nearly a year and half old when the conditions still continued to exist. Termination was thus proper under MCL 712A.19b(3)(c)(i).

Termination pursuant to § (3)(g), a failure to provide care and custody, was also established by clear and convincing evidence. A parent's failure to comply with the parent-agency agreement or treatment plan is evidence of a parent's failure to provide proper care and custody for the child. *In re Trejo*, 462 Mich 341, 360–363; 612 NW2d 407 (2000). Conversely, the parent's compliance with the parent-agency agreement or treatment plan is evidence of his or her ability to provide proper care and custody. *In re JK*, 468 Mich 202, 214; 661 NW2d 216, 223 (2003).

Respondent's treatment plan in this case required her to complete parenting classes, undergo a psychological examination, attend individual therapy, take random weekly drug screens, obtain suitable housing, and obtain a source of income. Respondent completed the parenting classes but, according to foster care specialist Krishaun Harris, she did not benefit from the same. Parents not only have a responsibility to participate in services offered-they must also benefit from services. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). Harris testified at the October 21, 2015 termination trial, at which respondent failed to appear, that though respondent completed the parenting classes, she thereafter visited AM only sporadically. Harris testified that because AM was placed with family members, respondent would have been able to visit the child at least five days per week. Tonia Nolan, the paternal great-aunt with whom AM was placed, testified that respondent was able to visit with AM whenever she wished, but that she visited the child a total of four times in the year that Nolan had been caring for AM and did not show up for a scheduled Christmas visit with AM. Nolan testified that she initiated most of the visits, that respondent did not call to check up on AM, and that respondent had provided $30 in total support for the care of AM.

Harris further testified that respondent did not always act appropriately during the visits she did attend. For example, respondent would frequently go outside to smoke during the visits rather than spend time with AM. And, according to Harris, respondent barely engaged with AM during her visits. Harris testified that the relatives with whom AM had been placed reported that the child did not have a bond with respondent due to her lack of participation with AM during their visits. Nolan testified that during respondent's two to three hour visits with AM, she would only spend an hour or so with AM and would spend the remaining time outside smoking.

It appears that respondent did complete a psychological exam but did not complete individual therapy. According to Harris, respondent was twice referred to therapy, but her therapy services were terminated. Respondent did not obtain suitable housing, given that she and AM's father were residing in respondent's father's basement, and respondent did not report any income. Despite the fact that respondent was supposed to have weekly drug screens, she attended only two drug screens, which were negative, during the entire case. Harris testified that

-3-

she did not believe respondent would be able to change her circumstances if given additional time.

Respondent has no independent or suitable housing and no income with which to care for AM. More troublesome, respondent has shown little to no interest in AM. Respondent failed to attend several court hearings, including the termination trial. She has made no effort to establish a bond with AM, who entered foster care at just three months old. Though allowed the most flexible and open visitation with the child that this Court has ever seen, respondent visited AM only four times in a year. Respondent has not taken the opportunities afforded her in order to have her child returned to her. Her substantial non-compliance with her treatment plan as well as her near abandonment of AM throughout the court proceedings establishes by clear and convincing evidence that respondent has failed to provide proper care and custody for the child and there is no reasonable expectation that she will be able to do so within a reasonable time considering the child's age. Termination was proper under § (3)(g).

Respondent next argues that the circuit court's determination that termination was in AM's best interests was in error. We disagree.

We review for clear error the circuit court's decision that termination is in the child's best interest. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). The circuit court must find that termination is in the child's best interests by a preponderance of the evidence. *White*, 303 Mich App at 713. "To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id.* (citation and quotation marks omitted).

In support of her position that termination was not in AM's best interests, respondent cites to a statement made by Harris at the termination trial that respondent had appeared to properly care for AM at the visits Harris had observed in her own office when AM was three months old. This singular statement is not nearly enough to overcome the remaining testimony that respondent only visited AM four times throughout the proceedings and did not interact with AM during the bulk of the visitation periods. Even taking into account that the circuit court suspended respondent's visitation in March 2015, respondent still visited AM only four times between the October 7, 2014, date she was removed from the father's home and March 2015, despite the fact that she was allowed essentially unfettered access to AM.

In rendering its decision regarding AM's best interests, the circuit court noted that respondent did not comply with the parenting plan, had not bonded with AM, and showed no interest in AM as evidenced by her failure to appear at several hearings concerning AM, including the termination hearing. The circuit court indicated that AM needed permanency and that a guardianship would not allow for permanency. The circuit court did not clearly err in its best interests determination.

Affirmed.

/s/ Michael J. Talbot
/s/ Christopher M. Murray
/s/ Deborah A. Servitto