# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* HARRIS, Minors.

UNPUBLISHED
August 16, 2016

No. 331025
Oakland Circuit Court
Family Division
LC No. 15-828979-NA

Before: BECKERING, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her minor daughters, KH and DH, under MCL 712A.19b(3)(b)(*ii*), (g), and (j). For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

KH and DH were removed from respondent's care and placed in relative and foster care respectively after the Department of Health and Human Services (DHHS) received a report that respondent's fiancé, who was KH's legal father and DH's putative father, severely injured DH while both children were in his sole care.[1] On the day of the incident, respondent left the children with their father while she went to work. DH was a healthy, normal three-month-old baby at the time. When respondent returned from work, she found DH unresponsive and took her to the hospital. Doctors determined that DH sustained a severe brain injury from having been shaken in an extreme manner. At the time of the termination hearing, DH required around-the-clock care because she was legally blind, unable to walk or crawl, and had intestinal problems as a result of the abuse.

DHHS asked the court to terminate respondent's parental rights as part of the original petition. The court initially granted respondent supervised parenting time with the children, and she acted appropriately during the visits. Respondent was employed, but she had no health insurance. She believed she could properly care for her children. At the termination hearing, it was revealed that respondent knew the father had violent tendencies and a bad temper before the abuse of DH occurred. Evidence also showed that respondent remained in contact with the

---

[1] The trial court also terminated the father's parental rights to KH, which he has not appealed.

-1-

father after he was arrested for the abuse, and she wrote a letter in his support for his criminal case, stating that he was a great father and a family man.

The trial court found that DHHS presented clear and convincing evidence to terminate respondent's parental right under MCL 712A.19b(3)(b)(*ii*), (g), and (j), and that termination was in the children's best interests. Accordingly, it entered an order terminating respondent's parental rights to her minor children.

## II. TERMINATION OF PARENTAL RIGHTS

### A. STANDARDS OF REVIEW

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Laster*, 303 Mich App 485, 491; 845 NW2d 540 (2013) (citation and quotation marks omitted). We review a trial court's findings in this regard for clear error. *Id*. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (citation and quotation marks omitted). We also review a trial court's determination regarding a child's best interests for clear error. *Laster*, 303 Mich App at 496.

### B. STATUTORY GROUNDS FOR TERMINATION

A trial court may terminate parental rights under MCL 712A.19b(3)(b)(*ii*) if there is clear and convincing evidence that "[t]he child or a sibling of the child has suffered physical injury or physical or sexual abuse" and the parent "had the opportunity to prevent the physical injury or physical or sexual abuse [and] failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home." The record establishes that DH was three months old when she sustained a serious brain injury as the result of being shaken by her father. Evidence revealed that respondent did not initially believe the father was responsible for the abuse, and she speculated that the injuries could have been caused by DH's excessive crying. The trial court determined that respondent's explanation for DH's injuries was not plausible.

Testimony presented at the termination hearing also revealed that respondent was aware of the father's violent tendencies, and his family members warned her about his bad temper before the abuse occurred. Evidence showed that respondent and the father argued frequently, he threatened her, he pushed her to the floor while she was pregnant, and she left with the children on at least one occasion because she was afraid of him. The trial court found that respondent minimized the domestic violence in their relationship. Father's aunt also testified that he once disciplined KH for kissing a little boy when she was less than one year old by forcefully putting her on a counter and yelling at her for being "fast and promiscuous."

At the termination hearing, respondent claimed she was no longer in a relationship with the father, but testimony revealed the she contacted him as recently as the month before the hearing. During her previous contacts with the father while he was in jail, respondent told him that she loved him, wanted to be with him, and would wait for him. The trial court was

concerned that respondent maintained contact with the father despite knowing that he was charged with abusing her daughter. Considering this evidence, the trial court did not clearly err by concluding that clear and convincing evidence supported terminating respondent's parental rights under MCL 712A.19b(3)(b)(*ii*).

A trial court may terminate parental rights under MCL 712A.19b(3)(g) if "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." In this case, the termination petition was based, in part, on anticipatory neglect, which provides that evidence of a parent's treatment of one child is probative of how she may treat the other children. *In re Hudson*, 294 Mich App 261, 266; 817 NW2d 115 (2011). DH sustained life-threatening injuries at the hand of her putative father after respondent left the children with him. At trial, respondent said that she did not believe he caused the injuries and speculated that they could have been caused by DH crying too much. Although respondent was not previously involved with child protective services, testimony revealed that she was aware of the father's bad temper and violent tendencies. Despite this knowledge, respondent often left her children in his sole care. Respondent's actions support the trial court's finding that she failed to provide proper care and custody of her children and that there was a reasonable likelihood of foreseeable neglect if the court returned the children to her. Therefore, the trial court did not clearly err when it found that terminating respondent's parental rights was justified under MCL 712A.19b(3)(g).

A trial court may terminate parental rights under MCL 712A.19b(3)(j) if "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Although respondent no longer lives with the father, evidence showed that she maintained ties with him. As recently as a month before the termination hearing, respondent contacted the father in jail. She acknowledged that while he was in jail, she told him that she loved him, wanted to be with him, and would wait for him. Respondent was aware that the father was responsible for DH's injuries, but she testified that she was not concerned about him being around KH. On this record, the trial court did not clearly err by concluding that there was a reasonable likelihood that the children would be harmed if they were returned to respondent's care. Further, the fact that the father is now in prison is inconsequential because it is respondent's behavior that is in question and shows her failure to acknowledge the abuse and to place her children's needs before her own. See *In re Gonzales/Martinez*, 310 Mich App 426, 432; 871 NW2d 868 (2015) (holding that termination was warranted even though the children's abuser was in jail because evidence showed that the respondent had placed and would continue to place her desire to be with her boyfriend, despite the abuse, over the needs of her children). The trial court did not clearly err by terminating respondent's parental rights under MCL 712A.19b(3)(j).

Finally, respondent argues that termination was improper because she was not given an opportunity to participate in reunification services. We disagree. Reunification services are not required in every situation. *In re Terry*, 240 Mich App 14, 25 n 4; 610 NW2d 563 (2000). When, as here, DHHS seeks to terminate parental rights as part of the initial petition, it is unnecessary to develop a case service plan or to provide services because the agency's goal is termination, not reunification. See *In re HRC*, 286 Mich App 444, 463; 781 NW2d 105 (2009). Accordingly, the trial court did not err by terminating respondent's parental rights, despite the

fact that she was not offered reunification services. In sum, the trial court properly concluded that DHHS established statutory grounds to terminate respondent's parental rights by clear and convincing evidence.

## C. BEST INTERESTS

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights . . . ." MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *Moss*, 301 Mich App at 90. In determining a child's best interests, the trial court may consider a variety of factors including a child's bond to the parent, a parent's ability to parent, a child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). A trial court may also consider a respondent's history and psychological evaluation. *In re Jones*, 286 Mich App 126, 131; 777 NW2d 728 (2009). A child's placement with relatives weighs against termination, and must be explicitly considered by the court when determining a child's best interests. MCL 712A.19a(6)(a); *Olive/Metts*, 297 Mich App at 43.

The trial court did not clearly err by finding that terminating respondent's parental rights was in the best interests of the children. The record shows that respondent loved her children, regularly visited them, and acted appropriately when she was with them. Although DH's young age and severe injuries prevented a finding regarding any bond between parent and child, evidence showed that KH loved respondent and was happy when she saw her. Respondent testified that she was not present when DH was injured, and she had no history with child protective services. Respondent also testified that she could provide for her children through her employment, support from extended family, and governmental services. She claimed that she was no longer in contact with the father and did not intend to return to him or allow him around the children after his release from prison.

However, the record also shows that respondent was aware of the father's violent tendencies and bad temper, yet she failed to remove her children from the dangerous living situation and allowed him to care for the children. In addition to assaults against respondent herself, testimony showed that respondent witnessed the father's volatility toward her children during the incident in which he disciplined KH at a family gathering. Respondent refused to acknowledge the seriousness of the father's offense, and continued a relationship with him even after he was charged with abusing DH and put in jail.

The psychologist who evaluated respondent concluded that her ongoing contact with the father demonstrated "extremely poor judgment." Respondent's psychological evaluation indicated that she had narcissistic tendencies and an inability to appreciate her choices and to place the needs of others, including her children, above her own. This was further evidenced by the fact that respondent wrote a letter of support in the father's criminal case. The trial court found that respondent's stated reason for writing the letter—to make the father feel better—was not believable. The court found that respondent demonstrated poor judgment, minimized the seriousness of her relationship problems, even to the extent of characterizing her relationship

-4-

with the father as being strong, and placed herself and her children at risk by continuing to reunite with the father even after his abusive actions.

Evidence also showed that respondent lacked a proper plan to care for the children. Her income from her two part-time jobs was insufficient to provide financially for the children, especially because DH required around-the-clock care and extensive medical treatment. The trial court found that respondent's plan was "very, very sparse." Respondent had no health insurance and planned to rely on yet-to-be approved government assistance to pay for DH's medical expenses.

The children were thriving in their temporary placements. The trial court found that DH's foster parents had increased her life expectancy through their constant care, and KH was well-adjusted living with her paternal great-grandparents and had bonded with them. The children were very young, and the trial court found there was a need for permanency and stability in their lives. Considering these facts, the trial court did not clearly err by finding that termination of respondent's parental rights was in the children's best interests.

On a related issue, respondent contends that the trial court failed to address whether termination was appropriate in light of the placement with relatives. Again, because a child's placement with relatives weighs against termination, "the fact that the children are in the care of a relative at the time of the termination hearing is an explicit factor to consider in determining whether termination was in the children's best interests." *Olive/Metts*, 297 Mich App at 43 (citation and quotation marks omitted). If a trial court fails to explicitly address whether termination is appropriate in light of a child's placement with relatives, we deem the factual record inadequate to make a best-interest determination. *Id.* In this case, DH was placed with foster parents who were not relatives, and KH was placed with her paternal great-grandparents. In rendering its best-interest decision, the trial court explicitly addressed the fact that KH had been placed with relatives, finding that she was well taken care of in her placement and that she had bonded with her great-grandparents. The court nevertheless concluded that termination of respondent's parental rights was in KH's best interests. Therefore, the trial court properly considered this factor. In sum, respondent has not shown any errors warranting relief.

Affirmed.


/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola

-5-