# STATE OF MICHIGAN

# COURT OF APPEALS

In re L. A. PRIDMORE, Minor.

UNPUBLISHED
May 10, 2018

No. 340084
Oakland Circuit Court
Family Division
LC No. 2016-846649-NA

Before: CAVANAGH, P.J., and STEPHENS and SWARTZLE, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating his parental rights to the minor child under MCL 712A.19b(3)(b)(*i*) (parent's act caused physical injury or abuse to the child and reasonable likelihood of future injury or abuse), (b)(*ii*) (parent who had opportunity to prevent the physical injury or abuse failed to do so and reasonable likelihood of future injury or abuse), (g) (without regard to intent, failure to provide proper care or custody and no reasonable expectation that parent would be able to provide proper care or custody within a reasonable time considering the child's age), (j) (risk of harm if child returned to parent), and (k)(*v*) (parent abused the child and abuse included life-threatening injury). We affirm.

Respondent, a divorced physician, had visitation with the child on the weekend of September 9 to 11, 2016. While in respondent's exclusive care, on September 11, 2016, the almost two-year-old child displayed symptoms of being in a critical state of breathing distress. After administering some preliminary efforts, respondent called 911. The child was rushed by ambulance to Providence Hospital in a critical state of respiratory distress and unconsciousness. The child had to be intubated several times to keep him alive. He was transferred to the children's Intensive Care Unit at Children's Hospital for further emergency medical care. In addition to cardiac distress, he was experiencing circulatory concerns and low core body temperature. Toxicology tests revealed the presence of fentanyl, an opioid 100x more potent than morphine.

Police investigations later revealed that respondent had been addicted to fentanyl, was using it during visitations with his son, and had left it on a counter in reach of his son. Respondent never informed anyone of the possibility that the child was exposed to fentanyl, despite the severity of the child's medical emergency. Instead, respondent attempted to hide his fentanyl use, telling the child's mother that the child had possibly ingested berries at a park and removing a bottle of fentanyl from his apartment during a search by police following the

incident. Respondent was charged with second-degree child abuse, pleaded no contest, and was incarcerated during the pendency of this case.

On appeal, respondent does not challenge the trial court's determination that the above-mentioned statutory grounds supported termination of his parental rights. Respondent only challenges the trial court's determination that termination of his parental rights was in the child's best interest. Whether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). This Court reviews a trial court's decision regarding a child's best interests for clear error. *In re Laster,* 303 Mich App 485, 496; 845 NW2d 540 (2013). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011).

The trial court must weigh the evidence available on the whole record in determining the child's best interests. *In re Trejo*, 462 Mich 341, 356; 612 NW2d 407 (2000). It may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (internal citations omitted). Other considerations include the length of time the child has been in foster care or placed with relatives, the likelihood that the child could be returned to respondent's care within the foreseeable future, and respondent's compliance with the case-service plan. *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012).

*Respondent's Substance Abuse and Violence.* Respondent first argues that the trial court erred in finding that it would be in the child's best interests to terminate his parental rights because he showed the trial court that, with therapy and substance-abuse treatment, he would be able to parent the child within a reasonable time. The record does show that, when in prison, respondent attended AA, NA, and EA meetings and a class in substance-abuse education. While under constant supervision in prison and with no access to outside sources, it appears that respondent was able to remain drug free and made statements to the trial court about his intention to stay drug free once released from prison.

Yet, the record also shows that respondent has a history of refraining from substance abuse when he is confronted and supervised, but then relapsing when the supervision goes away. His ex-wife, the child's mother, testified, for example, that respondent repeatedly abused alcohol throughout their brief marriage. Even more alarming, respondent has a history of violence, both threatening and actual. The child's mother testified that respondent would repeatedly squeeze the child's nose shut until the child's face turned red and his arms flailed. She also testified that respondent choked her and slammed her into walls and the refrigerator, even when she was pregnant. In one outburst, respondent threatened to kill the child and his mother by chopping them up with an axe. Respondent also threatened to burn down the house and to commit suicide.

Eventually, the child's mother obtained a PPO against respondent. Shortly thereafter, respondent left for Africa on a medical mission and, while there, he emailed her that he was going to get help, attend alcohol counseling, and get therapy. After he returned, instead of having the PPO served on respondent, she gave him a second chance, letting respondent back in

the home. Yet, respondent failed to keep his promises. Instead, his use of alcohol and violence escalated until the child's mother called the police and they served respondent with the PPO. Under the PPO, respondent was not allowed to have any contact with her or the child other than supervised visitation.

Respondent subsequently moved into his parents' home and, in exchange for dismissing the PPO, respondent agreed to a provision in the divorce decree that required him to submit to six months of drug testing and ten months of supervised visitation. He was also required to take an anger-management course. He agreed that he was required to have supervised visitation because his behavior was unsafe around his son. The divorce was finalized and the supervised visitation took place at respondent's parents' home, where respondent continued to live. As soon as the drug testing stopped, however, respondent started to use fentanyl, first stealing the drug from his mother and later purchasing it through an online blackmarket. Respondent became addicted to fentanyl and lost his job. Respondent admitted that he treated patients while under the influence of fentanyl, which made him groggy and impaired his judgment. After the incident leading to his imprisonment, respondent's license to practice medicine was suspended. Respondent testified that he was working with an attorney and a group called Health Professionals Recovery Program to get his license reinstated, but there was no guarantee that respondent would ever be granted the opportunity to practice medicine again.

The psychologist who administered respondent's psychological evaluation found that respondent had a propensity toward substance abuse. Whenever respondent had faced difficult challenges in his life, he had turned to substances. The psychologist further opined that, even if respondent had told the physicians at the hospital where the minor child was being treated about the fentanyl, he could not say that he would change his recommendation for termination because the fact that respondent, a physician with knowledge of how dangerous this substance was, left it within reach of his young child demonstrated a major breakdown in judgment. The psychologist recommended that termination of respondent's parental rights was in the best interests of the child because the child, age 2½ at the time of termination, was at the critical age for forming a bond with parental figures, and the evidence showed that respondent would have no contact with the child for at least two years and most likely more.

After taking testimony and other evidence, the trial court addressed the best-interest factors set forth in MCL 722.23(a)–(l). It found that the majority of the factors weighed in favor of termination. The trial court found respondent to have a "morally deficient character" demonstrated by his addiction to drugs, his continuing to practice medicine while under the influence of fentanyl, and his decision to delay medical attention for his child by putting "his own liberty ahead of his son's life." Respondent's earlier domestic violence against the child and the child's mother also weighed in favor of termination. The trial court found that, during the child's crucial period for parental bonding, any bond that existed between respondent and the child would be lost because of respondent's incarceration. Respondent's two-year sentence in the abuse case had a no-contact clause in it and there was no guarantee that respondent would be permitted contact with the child while on probation. Further, the trial court found that any bond that might have existed on respondent's part was not sufficient enough to guarantee that respondent would look out for his child's welfare. The trial court thus denied respondent's request for another chance to prove that he could properly care for the child.

Based on our review of the record, we agree with the trial court that termination of respondent's parental rights was in the child's best interests. Respondent's actions clearly and repeatedly endangered the health and safety of the child. Despite being given numerous opportunities to protect the child, respondent continued to place his own interests above the interests of the child. The trial court did not clearly err in terminating respondent's parental rights.

*Parent Is Not a "Relative" Under MCL 712A.19a.* Respondent also argues that the trial court erred by declining to consider the child's placement with his mother as a factor weighing against termination. According to respondent, the child's mother is a "relative" under MCL 712A.19a, and therefore the trial court was required to consider that placement before terminating respondent's parental rights. *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012).

Respondent's argument is without merit. The trial court recognized that the child was placed with the child's mother, but declined to weigh that in respondent's favor, noting that the child's mother is not a statutory "relative" under MCL 712A.19a. The trial court was correct on both a plain reading of the statute as well as binding precedent from this Court. See MCL 712A.13a(1)(j) (providing an exhaustive list of individuals who qualify as a "relative"); *In re Schadler*, 315 Mich App 406, 413; 890 NW2d 676 (2016) ("[B]ecause BS's biological mother was not a 'relative' for purposes of MCL 712A.19a, the trial court was not required to consider that relative placement.").

Affirmed.

/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens
/s/ Brock A. Swartzle