*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* COLLINS/HARDY/ROMERO, Minors.

UNPUBLISHED
February 10, 2022

No. 357157
St. Clair Circuit Court
Family Division
LC No. 20-000217-NA

Before: GADOLA, P.J., and MARKEY and MURRAY, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her five minor children under MCL 712A.19b(3)(b)(*ii*) (failure to prevent physical or sexual abuse) and (j) (reasonable likelihood child will be harmed if returned to parent). We affirm.

## I. FACTUAL BACKGROUND

This matter arose in November 2020 when petitioner, the Department of Health and Human Services (DHHS), filed a petition for temporary custody of the minor children, which was subsequently amended to seek permanent custody.[1] The petition alleged that respondent's boyfriend, Justin Redfield, sexually abused two of respondent's children, KH and DR, while they were in her care, and that respondent failed to protect the children. The testimony of KH and DR at the adjudicative and termination hearings was consistent with the petition. Specifically, KH testified she reported Redfield's first instance of sexual abuse to respondent, but respondent did not believe her and took no action against Redfield. Subsequently, Redfield again abused KH, and also abused DR. Respondent testified she continued to permit Redfield into the home and left the children in his care unsupervised, even after these allegations, because she did not believe KH and DR, despite knowing Redfield was a registered sex offender previously convicted of first-degree criminal sexual conduct (CSC-I) with a victim under 13 years of age. Respondent also testified

---

[1] Respondent is the biological mother of DLC, DBC, KH, DR, and MH. KH and MH have no legal or putative fathers. DR's legal father was not a respondent. Though petitioner also sought termination of the parental rights of DLC and DBC's legal father, he is not a party to this appeal and he did not file a separate appeal.

-1-

she took no action regarding KH's and DR's allegations because she wanted to maintain her relationship with Redfield.

Following a bench trial, a referee found MCL 712A.2(b)(1) and (2) to be proved by a preponderance of the evidence, permitting the trial court to take jurisdiction over the minor children. The trial court adopted the referee's findings. After a termination hearing, the referee found MCL 712A.19b(3)(b)(*ii*) and (j) to be proved by clear and convincing evidence and found termination to be in the minor children's best interests by a preponderance of the evidence. The trial court agreed and entered an order terminating respondent's parental rights to the minor children. Respondent now appeals.

## II. ANALYSIS

Respondent argues (1) the trial court clearly erred when it found MCL 712A.2(b)(1) and (2) were proved by a preponderance of the evidence, (2) the trial court clearly erred when it found MCL 712A.19b(3)(b)(*ii*) and (j) were proved by clear and convincing evidence, and (3) the trial court clearly erred when it found that it was in the best interests of the minor children to terminate respondent's parental rights. We disagree.

### A. JURISDICTION OVER THE MINOR CHILDREN

This Court reviews "the trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact." *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 296-297.

DHHS may, after a preliminary investigation into allegations of child abuse or neglect, "petition the Family Division of the circuit court to take jurisdiction over the child" suspected of being abused or neglected. *In re Ferranti*, 504 Mich 1, 15; 934 NW2d 610 (2019). If the trial court authorizes the petition, it must hold an adjudicative hearing to determine "whether the trial court can exercise jurisdiction over the child (and the respondents-parents) under MCL 712A.2(b) so that it can enter dispositional orders, including an order terminating parental rights." *Id*. "The adjudication divests the parent of her constitutional right to parent her child and gives the state that authority instead." *Id*. at 16. A trial court may exercise jurisdiction over a minor child if it finds one or more statutory bases for jurisdiction have been established by a preponderance of the evidence. *Id*. at 15; *In re BZ*, 264 Mich App at 295; MCR 3.972(C)(1). In relevant part, MCL 712A.2(b)[2] provides trial courts with jurisdiction in proceedings concerning a juvenile:

(1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or

---

[2] Amendments to MCL 712A.2 that took effect on October 1, 2021, did not alter the relevant portion of the statute that was in effect at the filing of the petition.

her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. . . .

\* \* \*

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. [MCL 712A.2(b).]

The trial court did not clearly err in exercising jurisdiction over respondent's minor children. The evidence established respondent put her relationship with Redfield above the safety of KH and DR by allowing Redfield to remain in the home after the girls alleged—multiple times—that he sexually abused them. Though respondent testified she took no action after KH's and DR's allegations because she did not believe them, she could not substantiate her belief by providing examples of times either daughter lied about something so serious. Even after multiple allegations against—and an official police investigation into—Redfield, respondent allowed Redfield to continue staying in her home with her children, sometimes even leaving them in his unsupervised care.

By respondent's own admission, her desire to maintain a relationship with Redfield clouded her judgment and led her to make bad decisions regarding the care of her children. Though respondent testified she regretted mistrusting KH and DR, and that she was no longer guided by her desire to be in a relationship, the evidence demonstrated she was continuing her relationship with Redfield at the time of the adjudicative hearing—while he was incarcerated for multiple counts of CSC against KH and DR. Respondent's conduct resulted in KH feeling angry and unsafe in her own home, feelings that amplified each time respondent ignored KH's and DR's allegations against Redfield. Thus, by continuously subjecting KH and DR to sexual abuse, respondent neglected to provide the proper care necessary for KH's and DR's physical health and substantially risked harm to their mental well-being. MCL 712A.2(b)(1). Moreover, although "[t]he fact that there are statutory grounds to assume jurisdiction over one minor child does not automatically mean that there are statutory grounds to assume jurisdiction over a second minor child," the way "a parent treats one child is certainly *probative* of how that parent may treat other children." *In re Kellogg*, 331 Mich App 249, 254, 259; 952 NW2d 544 (2020) (quotation marks and citation omitted). Respondent's conduct toward KH and DR is probative of how she treats her other children. By leaving her children in the unsupervised care of Redfield and ignoring the needs of her children, respondent neglected to provide proper or necessary support and care for *all* of her children and created a home that was unfit for each of them. MCL 712A.2(b)(1) and (2).

Because a preponderance of the evidence supports at least one statutory basis for jurisdiction over respondent's minor children, this Court is not left with a definite and firm conviction the trial court made a mistake in exercising jurisdiction. *In re Ferranti*, 504 Mich at 15; *In re BZ*, 264 Mich App at 296. As such, the trial court properly exercised jurisdiction over respondent's minor children under MCL 712A.2(b)(1) and (2).

## B. STATUTORY GROUNDS FOR TERMINATION

This Court reviews "for clear error a trial court's finding of whether a statutory ground for termination has been proven by clear and convincing evidence." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). See also *In re Sanders*, 495 Mich 394, 406; 852 NW2d 524 (2014) (stating dispositional orders "are afforded considerable deference on appellate review"). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App at 296-297.

A parent's "fundamental right" to "control the custody and care of her children is not absolute, as the state has a legitimate interest in protecting the moral, emotional, mental, and physical welfare of the minor and in some circumstances neglectful parents may be separated from their children." *In re Sanders*, 495 Mich at 409-410 (quotation marks and citation omitted). Once a trial court's jurisdiction over a minor child is established, "the trial court has broad authority to enter orders that are appropriate for the welfare of the juvenile and society in view of the facts proven and ascertained." *In re Ferranti*, 504 Mich at 16 (quotation marks and citation omitted). However, a parent's right to manage the care of his or her child "does not evaporate simply because they have not been model parents," and "all parents are constitutionally entitled to a hearing on their fitness before their children are removed from their custody." *In re Sanders*, 495 Mich at 410, 412 (quotation marks and citations omitted).

If DHHS files a termination petition, the trial court must hold a termination hearing to determine whether clear and convincing evidence establishes that "one or more statutory grounds for termination exist." *In re Ferranti*, 504 Mich at 16. See also *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011) ("Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds."). Termination is appropriate under MCL 712A.19b(3)(b)(*ii*) if "[t]he child or a sibling of the child has suffered physical injury or physical or sexual abuse" and "[t]he parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home." Termination is appropriate under MCL 712A.19b(3)(j) if "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Mere conjecture about future harm is insufficient to establish a reasonable likelihood of future harm and is, therefore, insufficient to support termination. *In re Sours*, 459 Mich 624, 636; 593 NW2d 520 (1999).

The trial court did not clearly err in finding MCL 712A.19b(3)(b)(*ii*) and (j) had been proven by clear and convincing evidence. The testimony at the adjudicative and termination hearings established Redfield sexually abused KH and DR on numerous occasions.[3] Respondent took no action against Redfield after KH brought these incidents to her attention even though she

---

[3] A trial court may consider and rely on evidence admitted at the adjudication hearing to support its decision to terminate parental rights. *In re Mota*, 334 Mich App 300, 315; 964 NW2d 881 (2020).

-4-

knew he was a registered sex offender, and she allowed Redfield to remain around the minor children even after the investigation into Redfield began. As a result of respondent's inaction after KH's first allegation against Redfield, Redfield not only sexually abused KH again, causing KH immense emotional distress, but he also sexually abused DR. Moreover, respondent's handling of KH's and DR's allegations led DLC and DBC to disbelieve KH and to blame KH and DR for causing them to be removed from respondent's care. See *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011) (reasoning there was a continuing risk of emotional harm when a mother's ongoing denial that she sexually abused her child turned the child's siblings against the child).

Respondent claimed she would no longer make bad parenting decisions because she no longer prioritized maintaining a relationship with Redfield, but she continued to pursue a relationship with Redfield at the time of the termination hearing, after Redfield was incarcerated for abusing her daughters. Additionally, it is telling that respondent never willingly removed Redfield from her or her children's lives. Rather, respondent still allowed Redfield to be around the minor children until he was incarcerated. Though Redfield may be physically separated from the children while he is incarcerated, respondent's continued relationship with him demonstrates she prioritizes her own wants above her children's needs. Cf. *In re Laster*, 303 Mich App 485, 492; 845 NW2d 540 (2013) (finding there was not clear and convincing evidence of a reasonable likelihood of future abuse when the respondent willingly ended her relationship with the mother of a girl who sexually abused one of the respondent's children, moved out of the house before adjudication occurred, and was not associated with other known abusers).

Moreover, despite respondent's claims that she would be able to respond appropriately to sexual abuse in the future, her conduct demonstrates otherwise. When KH was sexually abused by her brothers' friend in 2018, respondent did not contact the authorities, nor did she bring KH to the hospital until she was instructed to do so by a counselor KH had told about the incident. When Redfield sexually abused KH, respondent repeatedly ignored the situation, did not contact the police, and did not remove Redfield from the home. When Redfield sexually abused DR, respondent again took no action against Redfield, nor did she inform DR's father about the incident until after DR brought it to his attention. Respondent's conduct demonstrates she lacks either the ability or the desire to respond appropriately when one of her children raises allegations of sexual abuse. See *In re Laster*, 303 Mich App at 494 (finding there was clear and convincing evidence that the children would be harmed if returned to the respondent-mother when she neglected to contact police after allegations of sexual abuse). Respondent's comfortability leaving her children in the unsupervised care of a known sex offender whom her children alleged abused them represented a concerning lack of judgment that endangered—and posed a continuing risk of endangering—all her children.

For those reasons, clear and convincing evidence demonstrated respondent failed to prevent sexual abuse against KH and DR. MCL 712A.19b(3)(b)(*ii*). Moreover, respondent's failure to respond to the sexual abuse and her continued relationship with Redfield demonstrated clear and convincing evidence of a reasonable likelihood, apart from mere conjecture, that her children would suffer further injury in the foreseeable future if they were returned to respondent. MCL 712A.19b(3)(b)(*ii*) and (j); *In re Sours*, 459 Mich at 636. Because clear and convincing evidence supports at least one statutory ground for termination, this Court is not left with a definite and firm conviction the trial court made a mistake. *In re Ferranti*, 504 Mich at 16; *In re Moss*, 301 Mich App at 80; *In re BZ*, 264 Mich App at 296. Consequently, the trial court properly

concluded statutory grounds existed under MCL 712A.19b(3)(b)(*ii*) and (j) to terminate respondent's parental rights.

## C. CHILDREN'S BEST INTERESTS

This Court reviews for clear error a trial court's finding that termination of parental rights is in the best interests of the children. *In re Hudson*, 294 Mich App at 268. See also *In re Sanders*, 495 Mich at 406 (stating dispositional orders "are afforded considerable deference on appellate review"). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App at 296-297.

Once a statutory ground for termination is established by clear and convincing evidence, the trial court must terminate a respondent's parental rights if a preponderance of the evidence demonstrates termination is in the best interests of the children. *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020); MCL 712A.19b(5). A trial court must "focus on the child rather than the parent" when determining a child's best interests. *In re Mota*, 334 Mich App at 321.

> In assessing a child's best interests, a trial court may consider such factors as a child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. The trial court may also consider how long the child was in foster care or placed with relatives, along with the likelihood that the child could be returned to [the] parents' home within the foreseeable future, if at all. [*Id.* (quotation marks and citations omitted) (alteration in original).]

Additionally, "[a] child's placement with relatives is a factor that the trial court is required to consider . . . ." *Id.* (quotation marks and citation omitted) (alteration in original).

The trial court did not clearly err in finding termination was in the minor children's best interests. Notably, there seemed to have been a lack of a meaningful bond between respondent and her children. The evidence demonstrated respondent had spent little-to-no time with the children since they were removed from her care and she only once inquired about DR's adjustment outside of her care.[4] Despite their lack of contact with respondent, the children were all doing well in the care of relatives. In fact, KH entered therapy once removed from respondent's care, a step respondent never took despite having knowledge of numerous sexual assaults against KH over two years. Respondent's repeated failure to respond appropriately to her daughters' allegations of sexual abuse, her failure to prevent additional abuse, and her continued relationship with Redfield all demonstrated a concerning pattern about respondent's parenting ability. See *id.* at 323 (stating

---

[4] During the termination proceedings, DLC, DBC, KH, and MH were placed in the care of respondent's mother and DR was placed in the care of her father.

that even a single act of sexual abuse by a parental figure represents a serious danger to a minor child).

Moreover, respondent's behavior demonstrates she lacked insight regarding how her conduct has negatively impacted her children. See *In re Hudson*, 294 Mich App at 268 (reasoning the respondent's "failure to fully appreciate her conduct set a poor example for the children" and supported a finding that termination was in the children's best interests). Respondent's conduct not only caused KH significant mental distress, but it also resulted in DLC and DBC distrusting KH and DR and blaming them for the children's removal from respondent, further damaging the psychological and emotional well-being of her children. A preponderance of the evidence proved respondent repeatedly put her wants above her children's needs, indicating a lack of a meaningful bond between respondent and her children, and demonstrating the children's well-being was significantly at risk while in respondent's care.

Additionally, the trial court explicitly considered placement of the children in the care of relatives. It weighed the willingness of DLC, DBC, KH, and MH's grandparents to adopt the children, and the fact that DR was in the care of her father, against the minor children's need for stability and safety in their home environments. This Court has held a trial court did not clearly err in determining termination of a respondent's parental rights was not contrary to the best interests of the respondent's children when the respondent had minimal meaningful contact with her children, all of the respondent's children flourished in the care of their guardians, and relatives expressed interest in adopting the respondent's children. *In re BZ*, 264 Mich App at 301. Similarly here, respondent's minimal contact with the children and the children's positive adjustment with relatives, who are interested in adopting them, support the trial court's finding that termination was in the children's best interests.

Finally, respondent's argument that reunification and rehabilitation efforts should have been made in her case is unpersuasive because once a trial court has found statutory grounds for termination, the focus shifts to the child, rather than the parent, to assess the child's best interests. *In re Mota*, 334 Mich App at 320-321. That respondent may have been able to better parent her children if such efforts were made is an argument she should have, but failed, to make before the trial court. Respondent's parenting ability was just one factor the trial court could consider in assessing the minor children's best interests, and it was not clearly erroneous for the trial court to conclude other relevant factors, such as the children's need for stability and safety, outweighed this factor.

Because a preponderance of the evidence supports the trial court's finding that termination was in the best interests of the minor children, this Court is not left with a definite and firm conviction the trial court made a mistake. *Id.* at 320; *In re BZ*, 264 Mich App at 296. Consequently, the trial court properly determined termination of respondent's parental rights was in the best interests of the minor children.

Affirmed.

/s/ Michael F. Gadola
/s/ Jane E. Markey
/s/ Christopher M. Murray