*In re* LASTER

Docket Nos. 315028 and 315521. Submitted November 6, 2013, at Detroit. Decided December 26, 2013, at 9:00 a.m.

The Department of Human Services (DHS) petitioned the Wayne Circuit Court, Family Division, for the termination of the parental rights of L. Olds and R. Laster to their two minor children. The court, Christopher D. Dingell, J., found that there was clear and convincing evidence to terminate respondents' parental rights under MCL 712A.19b(3)(a)(*ii*), (b)(*i*), (c)(*i*), (g), and (j), and that termination would be in the best interests of the children. Respondents appealed separately. The Court of Appeals consolidated the appeals.

The Court of Appeals *held*:

1. There is no court rule governing parenting time between adjudication and the filing of a termination petition. The only statutory provisions that address parenting time between adjudication and the filing of a termination petition are MCL 712A.18f(3)(e) and (f), which only address the required contents of an agency's case service plan. Accordingly, the issue of the amount, if any, and conditions of parenting time following adjudication and before the filing of a petition to terminate parental rights is left to the sound discretion of the trial court and is to be decided in the best interests of the child. No finding of harm is required. In this case, respondent-mother's parenting time was not suspended until after adjudication but before the termination petition was filed. Accordingly, the trial court did not err when it suspended respondent-mother's parenting time without a finding of harm.

2. To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established. In this case, the trial court found that there was clear and convincing evidence to terminate respondents' parental rights under MCL 712A.19b(3)(a)(*ii*), (b)(*i*), (c)(*i*), (g), and (j). Although the trial court clearly erred by finding that some of the statutory grounds supporting termination of respondents' parental rights were proven by clear and convincing evidence, because only one statutory ground for termination must be established for each parent, the trial court did not clearly err by

finding that at least one statutory ground as to each parent was proven by clear and convincing evidence.

3. While the DHS has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered. In this case, the DHS offered respondent-mother various services, including parenting classes and individual, group, and family therapy. The evidence demonstrates that reasonable efforts were made to reunify respondent-mother with her children, but respondent-mother failed to demonstrate sufficient compliance with those services.

4. Whether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence. In this case, respondent-father had very minimal involvement in the children's lives. He did not provide support for the children, and he had little or no contact with them for several years. There was also no evidence that he was able to provide suitable housing for the children. Accordingly, the trial court did not clearly err by finding that termination of respondent-father's parental rights was in the children's best interests.

Affirmed.

TERMINATION OF PARENTAL RIGHTS — PARENTING TIME — PERIOD BETWEEN ADJUDICATION AND BEFORE THE FILING OF A PETITION TO TERMINATE.

The issue of the amount, if any, and conditions of parenting time following adjudication and before the filing of a petition to terminate parental rights is left to the sound discretion of the trial court and is to be decided in the best interests of the child; no finding of harm is required.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Matthew Schneider*, Chief Legal Counsel, and *Jennifer L. Gordon*, Assistant Attorney General, for the Department of Human Services.

*Julie E. Gilfix* for L. Olds.

*Anthony J. Scotta* for R. Laster.

Michigan Children's Law Center (by *Michael Rintz*) for the children.

Before: OWENS, P.J., and JANSEN and HOEKSTRA, JJ.

OWENS, P.J. This matter involves a consolidated appeal regarding termination of respondents' parental rights. In Docket No. 315028, respondent-mother appeals as of right the trial court's order terminating her parental rights to her two minor children under MCL 712A.19b(3)(a)(*ii*) (desertion), (b)(*i*) (parent's act caused physical injury or abuse), (c)(*i*) (failure to rectify conditions of adjudication), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm if children return to parent's home). In Docket No. 315521, respondent-father appeals as of right that same order, which also terminated his parental rights to the two minor children on the same statutory grounds. We affirm.

First, respondent-mother argues that she was improperly denied mandatory parenting time before the filing of the termination petition contrary to MCR 3.965(C)(6)(a)[1] and MCL 712A.13a(11),[2] which interfered with her ability to reunify with her children. We disagree. This issue involves the interpretation and application of statutes and court rules, which we review de novo. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010).

MCR 3.965(C)(7)(a) provides:

> Unless the court suspends parenting time pursuant to MCL 712A.19b(4),[3] or unless the child has a guardian or legal

---

[1] Now renumbered as MCR 3.965(C)(7)(a).

[2] Now codified at MCL 712A.13a(13). MCL 712A.13a was amended by 2012 PA 115, effective May 1, 2012, and 2012 PA 163, effective June 12, 2012, which redesignated the numbering of the statutory subsections, but did not make any substantive changes to the subsection in question. Respondent-mother actually cites MCL 712.13a(11) in her appellate brief. However, no such statute exists, and it appears she meant to refer to MCL 712A.13a(11).

[3] This exception applies when the petition for jurisdiction includes a request to terminate parental rights at the initial disposition.

custodian, the court must permit each parent frequent parenting time with a child in placement unless parenting time, even if supervised, may be harmful to the child.

MCL 712A.13a(13) provides:

If a juvenile is removed from his or her home, the court shall permit the juvenile's parent to have frequent parenting time with the juvenile. If parenting time, even if supervised, may be harmful to the juvenile, the court shall order the child to have a psychological evaluation or counseling, or both, to determine the appropriateness and the conditions of parenting time. The court may suspend parenting time while the psychological evaluation or counseling is conducted.

Although these provisions require a trial court to make findings of harm before suspending parenting time, it is clear from the language of the court rule and the statute that these provisions only govern parenting time from the preliminary hearing to adjudication. MCR 3.965 is the preliminary-hearing rule and governs the trial court's actions at the preliminary hearing. By its own terms, subrule (C) of MCR 3.965 governs "pretrial placement" and subrule (C)(7) governs "parenting time or visitation" during pretrial placement. Likewise, MCL 712A.13a governs pretrial placement and subsection (13) only concerns parenting time if the child is removed from the home following the authorization of the petition. There is no indication in the language of the court rule or statute that these provisions are applicable once adjudication occurs, nor should they be, given that once adjudication occurs, the court has facts—proven by at least a preponderance of legally admissible evidence—on which to base an even more informed decision regarding parenting time than can be made at a preliminary hearing.

Once a termination petition is filed, parenting time is then governed by MCR 3.977(D) and MCL 712A.19b(4).

MCR 3.977(D) provides, "If a petition to terminate parental rights to a child is filed, the court may suspend parenting time for a parent who is a subject of the petition." MCL 712A.19b(4) provides in relevant part, "If a petition to terminate parental rights to a child is filed, . . . the court may suspend parenting time for a parent who is a subject of the petition." The suspension of parenting time once a petition to terminate parental rights is filed requires no finding of harm and is presumptively in the child's best interest, because, among other reasons, it protects infants or young children from the greatly increased risk—brought about by a parent facing termination of parental rights—of being kidnapped during parenting time and removed from the state;[4] it also protects older children from being told to run away and where and when to meet the parent so that they can leave the state together.

There is, however, no court rule governing parenting time between adjudication and the filing of a termination petition. The only statutory provisions that concern parenting time between adjudication and the filing of a termination petition are MCL 712A.18f(3)(e) and (f), which only address the required contents of an agency's case service plan that is created following adjudication for use at the initial dispositional hearing. These provisions state:

> The case service plan shall provide for placing the child in the most family-like setting available and in as close proximity to the child's parents' home as is consistent with the child's best interests and special needs. The case service plan shall include, but is not limited to, the following:

* * *

---

[4] Armed guards supervising parenting time are virtually unheard of, except for jail or prison visits.

(e) Except as otherwise provided in this subdivision, unless parenting time, even if supervised, would be harmful to the child as determined by the court under section 13a of this chapter or otherwise, a schedule for regular and frequent parenting time between the child and his or her parent, which shall not be less than once every 7 days.

(f) Conditions that would limit or preclude placement or parenting time with a parent who is required by court order to register under the sex offenders registration act.

It is clear from the statutory language that these provisions only govern the agency and what parenting time recommendations the case service plan must include following adjudication; they do not govern the trial court's authority to enter orders regarding parenting time following adjudication. In the absence of a court rule or statute, the issue of the amount, if any, and conditions of parenting time following adjudication and before the filing of a petition to terminate parental rights is left to the sound discretion of the trial court and is to be decided in the best interests of the child. No finding of harm is required, although such a finding is usually implicit in the court's decision.[5] Subsection (3)(e) simply directs the agency to include a recommended parenting time schedule in the case service plan, unless (1) the trial court had, before adjudication, determined under section 13a that parenting time, even if supervised, would be harmful to the child or (2) that the trial court had "otherwise" determined that parenting time, even if supervised, would be harmful to the child.

---

[5] We note that although the "Order of Disposition" form for child protective proceedings created by the State Court Administrative Office provides a box for the trial court to check indicating that parenting time with the parent may be harmful to the children, forms, whether drafted by a court or approved by the SCAO, do not have the force of law. See, e.g., MCL 24.207(h); *By Lo Oil Co v Dep't of Treasury*, 267 Mich App 19, 46; 703 NW2d 822 (2005).

The preliminary hearing in this case occurred on April 26, 2011, one day after the children were removed from the home. Adjudication occurred on August 25, 2011, at which time the trial court determined that there were statutory grounds to exercise jurisdiction over the children. Respondent-mother's parenting time was not suspended until June 26, 2012, which was after adjudication but before the termination petition was filed. Up until that time, she had been granted supervised parenting time. As discussed, there is no court rule or statutory provision that governs the trial court's authority concerning parenting time between adjudication and the filing of a termination petition, much less requiring the trial court to make a finding of harm before suspending parenting time. Accordingly, the trial court did not err when it suspended respondent-mother's parenting time without a finding of harm.

Next, both respondents argue that the trial court clearly erred by finding that there were statutory grounds for termination. We disagree.

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013), citing *In re Trejo Minors*, 462 Mich 341, 355; 612 NW2d 407 (2000). We review a trial court's findings for clear error. MCR 3.977(K); *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App at 296-297.

The trial court terminated respondents' parental rights under MCL 712A.19b(3)(a)(*ii*), (b)(*i*), (c)(*i*), (g), and (j).

With regard to subdivision (a)(*ii*), there was not clear and convincing evidence that respondent-mother had deserted the children for 91 days and had not sought custody during that period. Although respondent-mother had previously left the children with their maternal grandmother for an extended period of time, that occurred approximately one and a half years before the filing of the termination petition. And after that time, respondent-mother did have contact with the children and did participate in some, although very few, of the court hearings and required services.

However, there was clear and convincing evidence to terminate respondent-father's parental rights on this statutory ground. Evidence showed that respondent-father had moved to Ohio in 2010, and he did not provide support for the children. Although he had some phone contact with the children, he had not visited them since they were removed in April 2011. The only court-ordered service respondent-father had to comply with was to make himself available for an assessment of the suitability of his home, which he twice failed to do, despite ample notification.

With regard to subdivision (b)(*i*), there was not clear and convincing evidence that there was a reasonable likelihood that the children would suffer abuse in the foreseeable future if placed in the parents' home. There was testimony that before the removal of the children, one of the children was sexually abused by the daughter of respondent-mother's girlfriend. However, respondent-mother ended that relationship and moved out of the house before adjudication occurred, which was approximately 18 months before the termination hearing, and there was no evidence that respondent-mother associated with other known abusers. Likewise, there was no evidence that the children incurred abuse while in the care of respondent-father.

With regard to subdivision (c)(*i*), more than 182 days had passed since the issuance of the initial disposition order, and there was clear and convincing evidence that the conditions that led to the adjudication, specifically the lack of safe and suitable housing, continued to exist at the time of the termination hearing and there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering the children's ages. In the approximately two years that the children were in the court's temporary custody, respondent-mother failed to obtain suitable housing. During this time, she provided multiple false addresses to the agency. At the termination hearing, there was evidence that respondent-mother was living in a shelter. Although she testified that she would be obtaining a three-bedroom home once she received an income tax refund, given her inability to obtain suitable housing during the duration of the reunification plan, there is no indication that this would occur within a reasonable time. Likewise, respondent-father had not provided for the children and there was no evidence that he had obtained suitable housing, considering he twice failed to participate in an assessment of the suitability of his home.

With regard to subdivision (g), there was clear and convincing evidence that respondents failed to provide proper care or custody for the children and that there was no reasonable expectation that they would be able to provide proper care or custody within a reasonable time considering the children's ages. The court took jurisdiction of the children because respondent-mother failed to provide a safe and suitable home for her children. She left them with their maternal grandmother, whose parental rights had been previously terminated and whose home had no running water. As discussed, by the time of the termination hearing

respondent-mother had still failed to obtain suitable housing. In addition, she was unable to provide legal documentation of her income, despite two requests made by the agency. She also failed to attend the majority of her court hearings, parenting classes, weekly therapy sessions, and parenting time visits. She lived across the state from her children, and although she testified that she had phone contact with her son every weekend, there was evidence that she had not had phone contact with her daughter since December 2012. Further, respondent-mother did not participate in weekly drug screens, and of the two drug screens she did participate in after October 2012, one tested positive for alcohol. With regard to respondent-father, he did not provide support for the children, he failed to make himself available for a home assessment, he did not participate in other voluntary services, such as therapy and parenting classes, and he had not visited the children while this case was pending.

Finally, with regard to subdivision (j), there was clear and convincing evidence of a reasonable likelihood, based on the conduct or capacity of the respondent-mother, that the children would be harmed if they were returned to respondent-mother's home, but the same is not true for respondent-father. Respondent-mother left the children in the care of their maternal grandmother, who previously had her parental rights terminated and whose home did not have running water. During the approximately two years that the children were in the court's temporary custody, respondent-mother failed to maintain employment and obtain suitable housing, often living with others, and most recently, in a shelter. She also neglected to contact the police after her daughter informed her that she had suffered sexual abuse. Respondent-mother's conduct indicates, by clear and convincing evidence, that there is a reasonable likeli-

hood that the children would be harmed if returned to her custody. Although respondent-father was not involved in the children's lives and did not provide support for them, that is not, by itself, sufficient evidence that the children would be harmed if placed in his home.

Although the trial court clearly erred by finding that some of the statutory grounds supporting termination of respondents' parental rights were proven by clear and convincing evidence, because only one statutory ground for termination must be established for each parent, see *Moss*, 301 Mich App at 80, we conclude that the trial court did not clearly err by finding that at least one statutory ground as to each parent was proven by clear and convincing evidence.

Next, respondent-mother argues that the trial court erred by terminating her parental rights because the Department of Human Services (DHS) did not make reasonable efforts to reunify her and her children. We disagree.

"While the DHS has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). In this case, the DHS offered respondent-mother various services, including parenting classes and individual, group, and family therapy. However, respondent-mother cancelled a majority of her therapy sessions and failed to complete parenting classes. Although she was living in Grand Rapids, she was provided with referrals for the services offered. She was also provided with information to assist her in getting weekly drug screens in Grand Rapids, but she failed to do so. Further, there was testimony that she

was provided with a bus ticket to get to Detroit, but she failed to take advantage of it. Accordingly, we conclude that reasonable efforts were made to reunify respondent-mother with her children, but she failed to demonstrate sufficient compliance with those services. See *id.*

Finally, respondent-father argues that termination of his parental rights was not in the children's best interests. We disagree.

We review a trial court's decision regarding a child's best interests for clear error. *Trejo*, 462 Mich at 356-357. "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *Moss*, 301 Mich App at 90.

In this case, as discussed, respondent-father had very minimal involvement in the children's lives. He did not provide support for the children, and he had little or no contact with them for several years. There was also no evidence that he was able to provide suitable housing for the children, as he did not comply with the required home assessment. Accordingly, the trial court did not clearly err by finding that termination of respondent-father's parental rights was in the children's best interests.

Affirmed.

JANSEN and HOEKSTRA, JJ., concurred with OWENS, P.J.