*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision
until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* ROBERTS, Minors.

UNPUBLISHED
March 12, 2020

No.  349961
Cass Circuit Court
Family Division
LC No.  19-000053-NA

Before:  MURRAY, C.J., and METER and K. F. KELLY, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court order suspending supervised parenting time with the minor children, GR and FR.  We affirm.

## I.  BASIC FACTS

On February 9, 2019, respondent was investigated for improper supervision of her children in Berrien County.  Respondent was walking through a field with her minor children, but then she approached someone indicating that her children were kidnapped.  Respondent also spoke of "the end of days."  Consequently, respondent was hospitalized, and she admitted to using methamphetamines for her "vision quests."  The children were temporarily placed with the family of their father.[1]  A claim of improper supervision was substantiated, and a referral was made to Families First.

On April 15, 2019, Cass County Department of Health and Human Services (DHHS)  received a referral for investigation of abuse and neglect.  Specifically, it was alleged that respondent's home did not have heat or water and that methamphetamine was cooked and sold there.  Further, it was asserted that respondent did not supervise her children; they were observed playing in the busy street and were not adequately fed.  The complaint alleged that respondent's partner known as "Robert" was living there and selling drugs.  On April 16, 2019, a DHHS worker was able to walk through the home to ensure that there

---

[1] The children's father is also a respondent in the lower court proceeding, but his supervised visitation was not suspended.  Thus, he is not a party in this appeal.

was water, food, and beds for the children, but respondent refused to answer any questions or cooperate with the worker. After this visit, Robert moved out of the home.

On April 23, 2019, DHHS also responded to the home because of an allegation that the nephew of the children's father had sexually abused one of the children. However, the investigation of sexual abuse was complicated by the child's speech delay and respondent's objection to the child interviewer.[2] In an interview on April 29, 2019, respondent represented that she and the father were the only two people caring for the children in light of the abuse allegations. At that time, respondent also admitted that she had smoked crystal methamphetamine since the age of 12. She claimed that the drug worked "like coffee" because it allowed her to calm down, focus, and finish her thoughts. Without the drug, respondent purportedly suffered from attention-deficit hyperactivity disorder and depression. She also claimed that she read the Bible while smoking the drug, and it allowed her to give her problems to God. Respondent asserted that she only smoked the drug when the children were not present and did not keep the drug at the home or sell it. When this interview occurred, there was very little food in the home, but respondent declined an offer to be taken to DHHS for food assistance.

On May 11, 2019, respondent's five-year-old son, GR, ran to a neighbor's home in a state of extreme panic. He told the neighbor to get his four-year-old sister, FR, from respondent's home, but was too emotional to convey a reason. The children's father arrived at the neighbor's home and appeared to be high on drugs, but left. Accordingly, DHHS received an additional complaint that the parents were using the methamphetamine in front of the children and storing it in the home. The DHHS worker contacted law enforcement for the home visit to ensure the children were okay. However, police advised that respondent would be arrested because of an outstanding warrant for resisting and obstructing a police officer. When they arrived at the home, respondent advised that GR was with a neighbor, and FR was asleep in the living room. She indicated that an individual named "Frankie" was in the home, and FR could be left in his care. At that time, the DHHS worker sought emergency court intervention for the safety of the children. When the children were taken to DHHS offices and given lavender scented stuffed animals, GR noted that it "smells like weed." When questioned about his knowledge of weed, GR stated that respondent "smokes it in the grown up bedroom" and "keeps it in a package which is located all over the house." He also indicated that respondent "acts weird" after smoking. The court concluded that removal was warranted, but allowed respondent to engage in supervised visitation once released from jail. Following a bench trial, the court assumed jurisdiction over the children.

Respondent did not appear at the dispositional review hearing held on June 28, 2019. The DHHS worker testified that the children were doing well in their foster care placement. Respondent had completed her psychological evaluation with Dr. Randall E. Haugen. The evaluation noted that respondent was easily distracted and would provide irrelevant details. She was preoccupied with rocks, characterized them as "magical," collected them, and performed experiments on them.[3] Additionally, respondent was characterized as suffering from illogical and delusional thoughts. She attributed her

_____

[2] On May 23, 2019, after the children were removed from respondent's care, both children were interviewed and sexual abuse was not substantiated pertaining to the nephew.

[3] At earlier court proceedings, it was represented that respondent boiled rocks believing that they would turn into gold.

decision making to God, but noted that she decided to plea to a criminal charge because of weather conditions. Respondent admitted to marijuana and methamphetamine drug use, but claimed that it helped her connect to others and calmed her down. She acknowledged that she consumed substances, but claimed that there was no need to participate in substance abuse counseling. The evaluation concluded that there was no direct evidence that respondent would become physically abusive toward her children.[4] However, respondent was vulnerable to patterns of abuse and neglect because she succumbed to illogical and delusional-type thinking patterns. Additionally, she was prone to emotional outbursts and impulsive actions that were stressful to a child. Because of her personality, respondent would have difficulty supervising and maintaining the needs of her children. Consequently, Dr. Haugen recommended that visitation be suspended until respondent stabilized and had a psychopharmacological consultation.

Although respondent did not participate with random drug screens, two agency drug screens were positive for methamphetamine and one was positive for the marijuana compound THC. With regard to visitation, the minor children had to travel an hour to the visitation site, and respondent sometimes would not attend. Respondent did not regularly communicate with the DHHS worker and believed that it was the worker's responsibility despite the fact that respondent did not have a phone. Although it was requested that respondent bring a snack for the children, she did not comply. However, she brought an abundance of toys, filling the room with them. Yet, when respondent attempted to play with the children, she spent a couple minutes with each item before moving to the next. Additionally, her interactions with the children during the visits was sporadic. The minor children were concerned with respondent's appearance and demeanor. They would question her obsession with rocks and asked why her teeth were rotting. Additionally, at one of the visits, respondent had a huge open wound on her back filled with puss that concerned the children. As the visits progressed, respondent's teeth appeared to get worse. The children were worried about respondent, and the visits were "very dysregulated for them" particularly when she failed to show. Upon questioning by respondent's counsel, the DHHS worker acknowledged that the parenting time did not present a "danger" to the children. However, respondent was "not stable, mentally, emotionally, or with her sobriety." Therefore, the DHHS worker concluded that it was unhealthy for the children to engage in the visits until respondent became stable. The guardian ad litem agreed with the recommendation to suspend visitation. The trial court agreed and suspended the supervised parenting time. From this ruling, respondent appeals.

## II. APPLICABLE LAW

The interpretation and application of statutes and court rules is reviewed de novo. *In re Laster*, 303 Mich App 485, 487; 845 NW2d 540 (2013). The amount, conditions, and suspension of parenting time "following adjudication and before the filing of a petition to terminate parental rights is left to the sound discretion of the trial court and is to be decided in the best interests of the child." See *id*. at 490.[5] This Court reviews for clear error a trial court's best-interest determination. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). We defer to the trial court's assessment of credibility when reviewing

---

[4] The evaluation also noted that respondent had her parental rights terminated to three other children when she resided in Spokane, Washington.

[5] Although the guardian ad litem asserts, on appeal, that this issue is unpreserved and reviewed for plain error, counsel for respondent argued that the children were not acting out after the visits, were not harming other children, and "deal with the environment." The record reflects that this issue is preserved.

that court's suspension of parenting time. See *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011).

## III.  ANALYSIS

The trial court did not abuse its discretion by finding that the suspension of parenting time was in the best interests of the minor children. As the trial court noted, respondent admitted to consuming drugs for over 20 years. She tested positive for methamphetamine on two occasions. Yet, respondent claimed that she did not have a substance abuse problem and claimed that the Bible permitted the use of "crystal" methamphetamine.

Although parenting time was supervised and scheduled, respondent's attendance and level of participation was inconsistent. When respondent did attend, she failed to bring snacks, was distracted from the minor children, and ignored the children. According to the DHHS worker, the minor children noticed this behavior and constantly questioned respondent's actions. FR questioned respondent's obsession with rocks and why she carried them with her. They also questioned respondent about her health in light of an open wound on her back and rotting teeth. The trial court held that respondent's distraction from the children and behavior was likely related to her methamphetamine use. The DHHS worker also acknowledged that once respondent regulated herself, supervised parenting time would resume, consistent with Dr. Haugen's report.

In addition, Dr. Haugen's report recommended that parenting time be suspended until respondent's mental health could be stabilized with approximately six months of intervention. Although there was no direct evidence of physical abuse by respondent, she was prone to emotional outbursts and impulsive actions that could be stressful to a minor child.

Although the trial court did not explicitly employ the best-interest analysis in its decision to suspend parenting time, we conclude that the trial court did not err in its holding. The trial court explained its reasoning for the suspension was that the "deregulation is really too much for the children" and that "they have to be stabilized." The trial court acknowledged that upon entering the care of the trial court, the minor children's circumstances were "pretty tough." In light of this evidence and respondent's refusal to cease her use of methamphetamine despite the court's opinion that it affected her behavior at parenting time, the evidence supported the finding that the suspension of respondent's parenting time was in the best interests of the minor children. The trial court did not abuse its discretion by finding that it was in the best interests of the minor children to suspend parenting time.

Affirmed.

/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Kirsten Frank Kelly