*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re HAMPTON, Minors.

UNPUBLISHED
June 23, 2022

No. 359137
Wayne Circuit Court
Family Division
LC No. 2020-000797-NA

Before: LETICA, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Respondent father appeals as of right the trial court's order terminating his parental rights to his minor children, CRH and HMH, under MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*ii*), and (k)(*ix*). We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

When HMH was approximately seven years old, she laid down on the couch to watch a movie with respondent. Respondent pretended to be asleep but moved his hand underneath HMH's clothing and engaged in digital-vaginal penetration. HMH was confused and uncomfortable with what happened and wiggled free from respondent's grip. In a separate incident, HMH was seated on respondent's lap in a rocking chair. Again, respondent pretended to fall asleep but moved his hand underneath HMH's clothing and digitally penetrated her before she was able to wiggle free. A third act of digital penetration occurred in HMH's room when respondent clipped her toenails.

The family moved to a different residence when HMH was approximately 10 years old. In this home, HMH was taking a shower in the bathroom when she saw respondent's phone propped up on a soap dish with its camera facing her. HMH picked up the phone and found that it was recording her. HMH advised respondent that she found the phone. Respondent acted surprised, took the phone, and indicated that he deleted any video. On a second occasion, HMH saw the water in her fish tank moving just after respondent left her room. HMH discovered that respondent's work phone was plugged into the wall near the fish tank. When she went over to pick up the phone, she saw that the phone was on a FaceTime call, but the caller hung up. A short time later, respondent texted HMH, advised that he left his work phone in her room, and asked her to put the phone on the dining room table.

-1-

At night, HMH would sleep with her cat. It was common for HMH to wake up at night and find respondent in her room holding up her covers. And on one occasion, respondent had his phone propped up on HMH's blanket. If respondent saw that HMH woke up, he would pet the cat or go do something else. On one night, HMH was wearing a nightshirt and underwear when she saw respondent's camera phone flash and observed that the camera was recording her private area.

Respondent and HMH's mother separated, and respondent moved into his own home. In March 2020, HMH spent the night at his home, and respondent insisted that she cuddle with him. That evening, respondent poked HMH in the back with his private area. For the next visit, respondent allowed HMH's friend to spend the night. Respondent gave both girls alcohol. Respondent did not allow HMH and her friend to share an air mattress but had HMH sleep with him. Respondent engaged in penile-vaginal penetration with HMH. HMH recalled another instance where she became so intoxicated that she vomited and could not bathe herself. Respondent bathed HMH and again engaged in digital penetration.

In May 2020, respondent visited the family home when a fight occurred. He banged his head on the bathroom door and put a hole in it. HMH told respondent that he was acting crazy. Respondent physically struck HMH on her face. HMH and her mother locked themselves in the bathroom. After respondent left, HMH and her mother got in the car to go to the store. At that time, HMH disclosed the sexual abuse that occurred. HMH's mother then took her to the police station and reported the abuse.

Children's Protective Services (CPS) received the report that respondent had been sexually abusing HMH since she was about seven years old. Given the severity of these allegations, petitioner, the Department of Health and Human Services (DHHS), filed an original permanent custody petition requesting termination of respondent's parental rights to CRH and HMH. In March 2020, the CPS worker testified regarding the investigation into respondent's drinking and sexual abuse. The trial court authorized the petition, ordered the children's removal from respondent, and found that reasonable efforts to reunify were not required. Despite the COVID pandemic, respondent requested an in-person bench trial for adjudication.

In October 2021, the bench trial occurred, and all parties and witnesses physically appeared except respondent. Rather, respondent joined the proceedings through Zoom during cross-examination of HMH. After delineating the abuse, HMH testified that she never wanted to see respondent again and asked the trial court to terminate respondent's parental rights. Additionally, CRH testified that he was not sexually abused by respondent. However, he was physically struck by respondent and was afraid of respondent in light of what happened to HMH. CRH also did not want to have any contact with respondent.

Following the testimony of HMH and CRH, the trial court found by a preponderance of evidence that it had jurisdiction over HMH and CRH under MCL 712A.2(b)(1) and (2). It also found by clear and convincing evidence that termination of respondent's parental rights to both HMH and CRH was proper under MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*ii*), and (k)(*ix*). Finally, the trial court determined that termination was in the best interests of both HMH and CRH because respondent had irreparably damaged his parental relationship with them and because both HMH

and CRH had testified that they wished to have no further contact with respondent. This appeal followed.

## II. ANALYSIS

Respondent contends that the trial court clearly erred in terminating his parental rights because DHHS failed to present clear and convincing evidence to support the statutory grounds.[1] We disagree.

To terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination expressed in MCL 712A.19b(3) has been established. *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020) (citation omitted). A challenge to the trial court's finding that a statutory ground for termination was established is reviewed for clear error. *Id*. A finding is clearly erroneous when there is some evidence to support it, but a review of the entire record, leaves the reviewing court with the definite and firm conviction that the trial court made a mistake. *Id*.

The trial court found that MCL 712A.19b(3)(b)(*i*) was established, and it states:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

\* \* \*

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

(*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

"Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). Regard is given to the trial court's special opportunity to determine the credibility of the witnesses who appeared before it. *Id*. at 33. We conclude that there was clear and convincing evidence to support MCL 712A.19b(3)(b)(*i*), and the trial court did not clearly err in its determination. *In re Mota*, 334 Mich App at 320.

---

[1] Respondent alleged in his statement of question presented that the trial court clearly erred in assuming jurisdiction. However, in his discussion of the issue, he failed to raise any argument or authority to challenge jurisdiction. Accordingly, this challenge was abandoned. See *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009).

To establish MCL 712A.19b(3)(b)(*i*), DHHS had to demonstrate that respondent sexually abused HMH and that there was a reasonable likelihood that HMH would suffer injury or abuse in the foreseeable future if placed in the respondent's home. *In re Sours*, 459 Mich 624, 634-635; 593 NW2d 520 (1999).

The trial court did not clearly err in determining that petitioner presented clear and convincing evidence to establish that respondent sexually abused HMH. At trial, HMH testified that respondent began to sexually abuse her when she was only seven years old. This abuse began as fondling and accelerated to digital penetration. In addition to this abuse, respondent exploited HMH by recording her in states of undress or at vulnerable times such as when she was sleeping. When respondent moved into his own home, he provided HMH, an underage minor, with alcohol. Respondent engaged in penile and digital penetration with HMH after she was intoxicated. Additionally, the siblings testified that respondent physically abused them. HMH described that respondent acted erratically and violently and struck her when she told him that he was acting crazy. CRH further advised that respondent physically hit him. CRH expressed his fear of respondent particularly in light of the abuse of HMH. The siblings did not want to have any contact with respondent and requested that respondent's parental rights be terminated. Thus, the trial court also did not clearly err in finding that petitioner had shown there was a reasonable likelihood that HMH and CRH would suffer injury or abuse in the foreseeable future if placed in the respondent's home in light of the duration and severity of the abuse.

On appeal, respondent does not dispute the substance of HMH's testimony. Rather, respondent contends that clear and convincing evidence was not presented because of the failure to present physical or corroborating evidence of sexual abuse. However, in the context of criminal trials, a defendant may be convicted on a victim's uncorroborated testimony alone. MCL 750.520h ("The testimony of a victim need not be corroborated in prosecutions under sections 520b to 520g."). Indeed, the appropriate inquiry is not whether there were other types of supporting evidence that could have been presented, but rather, whether petitioner presented sufficient credible evidence to support the statutory grounds. We defer to the trial court's special opportunity to determine the credibility of the witnesses presented by petitioner. *In re Ellis*, 294 Mich App at 33. Accordingly, respondent's challenge to evidence that could have been presented is unavailing. DHHS was not required to provide corroborating evidence, and the trial court was entitled to find that the credible evidence presented established the statutory grounds. Thus, the trial court did not

clearly err in finding that the children's testimony was credible to establish MCL 712A.19b(3)(b)(*i*) as well as the other statutory grounds.[2]

Affirmed.

/s/ Anica Letica
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan

---

[2] Although we need not address the remaining statutory grounds cited by the trial court, we note that the evidence further supported MCL 712A.19b(3)(g), (j), (k)(*ii*) and (k)(*ix*).  Respondent does not contest the trial court's best interests determination.  However, once a statutory ground for termination has been established, the trial court must conclude that termination of parental rights is in the child's best interests before it can terminate parental rights.  MCL 712A.19b(5); *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012).  A trial court's decision regarding a child's best interests is also reviewed for clear error.  *In re Laster*, 303 Mich App 485, 496; 845 NW2d 540 (2013).  For purposes of completeness, we conclude that the trial court did not clearly err in finding that termination of parental rights was in the children's best interests.  Respondent sexually and physically abused HMH, furnished alcohol to at least one of his children, and physically hit CRH.  Both children testified that they wanted no further contact with respondent due to his abuse.