*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L OTT, Minor.

FOR PUBLICATION
December 15, 2022
9:15 a.m.

No. 362073
St. Joseph Circuit Court
Family Division
LC No. 2018-001016-NA

Before: GLEICHER, C.J., and MARKEY and RICK, JJ.

MARKEY, J.

In this child protective proceeding, respondent-appellant, Rachel Nichole Ott, appeals by delayed leave granted the trial court's order that prohibited respondent from having parenting time with her son, LO, until she had three consecutive clean drug screens after having tested positive for tetrahydrocannabinol (THC), the psychoactive ingredient of marijuana. Respondent, who had a medical-marijuana registry identification card, tested positive for THC on numerous occasions during the wardship. On appeal, respondent argues that Michigan law does not permit a court to deny a parent visitation with a child in foster care merely on the basis of a positive drug screen for marijuana unless there is evidence and a finding that the parent's use of marijuana poses a risk of physical or mental harm to the child. Respondent contends that there was no articulation or substantiation that respondent's marijuana use created an unreasonable danger to LO. Indeed, according to respondent, the evidence demonstrated that when she did exercise parenting time, it went extremely well and her conduct was exemplary—there was no threat of harm to the child. Respondent therefore maintains that the lower court orders suspending her parenting time whenever she tested positive for THC and requiring three consecutive clean drug screens to resume visitations were patently invalid. We reverse and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

On September 2, 2021, petitioner, the Department of Health and Human Services (DHHS), submitted a petition seeking authorization of the petition and an order taking jurisdiction over LO

and removing the child from his parents.[1] The DHHS's allegations concerned issues regarding homelessness, improper supervision and care, respondent's previous release of her parental rights to two other children, domestic violence, failure to cooperate in relation to past services, mental health struggles, and substance abuse. The same day, September 2, 2021, a preliminary hearing was held, and the trial court authorized the petition and ordered the removal of LO. At the hearing, the subjects of parenting time and marijuana use were discussed. The court allowed respondent to have supervised visits with LO through the DHHS, and it ordered random drug testing. The trial court indicated that it would not "require three clean [drug] screens" before respondent could begin exercising parenting time.

On September 23, 2021, at a pretrial hearing, respondent chose to enter a plea of admission to the allegation that she provided LO with unstable housing, which was contrary to his welfare. Therefore, with respect to the adjudicative phase of the proceedings, the trial court acquired jurisdiction over LO in connection with respondent. At the hearing, the issue of respondent's marijuana use arose. Respondent asserted that she had a medical marijuana card, and her attorney contended that respondent's parenting time could not be linked to whether she used marijuana unless it was demonstrated that the marijuana use created a risk of harm to the child. The trial court ordered continued random drug testing. The court noted that it wanted to see proof that respondent was in medical need of marijuana, and it also directed that an evaluation be conducted to assess whether respondent's use of marijuana posed a risk to the child.[2] The court further stated that "[w]e will continue visits[] at this time." But, in an apparent inconsistency, the order associated with the September 23, 2021 hearing granted supervised visits to respondent "after three consecutive clean drug/alcohol screens are submitted." (Original in all caps.) The order also indicated that a future missed or positive drug screen would result in a suspension of respondent's parenting time until three consecutive clean drug screens were submitted.

Upon review of documents in the lower court record, it appears that respondent was a "no show" for 20 scheduled drug screens in September, October, and November 2021, that she had three negative screens during that period (October 19, 21, and 26),[3] and that she tested positive for THC three times during the same timeframe (September 10, October 13, and November 1). It is not clear from the record how many scheduled visitations were canceled during this period, if any, due to the missed and positive drug screens.

The lower court record contains a parent-agency treatment plan (PATP) dated September 30, 2021. The PATP stated that respondent had a medical marijuana card and that "[i]t is believed that she uses marijuana frequently and often prioritizes this over providing for [LO]." The PATP further indicated that respondent "agree[d] to not use or possess any unprescribed drugs or alcohol and submit to random testing" and that she "acknowledged[d] [that] a missed, diluted or refused

---

[1] Respondent-father is not involved in this appeal.

[2] There is no indication in the record that an assessment was conducted to specifically evaluate whether respondent's marijuana use presented a danger to LO.

[3] We note that respondent was a no-show for a drug screen on October 25, 2021.

screen will be considered positive." We do note, however, that the PATP in the record was not signed by respondent.

On December 8, 2021, respondent was a no-show for a scheduled drug screen. A children's foster care court report prepared by a foster care specialist and dated December 9, 2021, noted that "[t]he parenting times for mother [respondent] remain supervised at this time." On December 13, 2021, respondent underwent a drug screen and tested positive for THC; the positive test was reported on December 22, 2021. On December 16, 2021, a dispositional review hearing was held. At the hearing, the trial court indicated:

> I'm going to say it's going to be still supervised [visitation], at this time, by the agency, or their designee. Again, our policy is a missed screen is . . . considered a positive screen. And you need to have three clean screens in order to resume parenting times. That is across the board for all of our cases. So, we will . . . continue that as the order.

The dispositional order related to the December 16, 2021 hearing provided that respondent "may have supervised parenting time as arranged by the agency" and that "a positive or missed drug/alcohol screen shall result in suspension of parenting time until 3 consecutive clean screens are submitted."

On December 17, 2021, respondent underwent a drug screen and tested positive for THC, which was reported on January 3, 2022. An updated PATP dated December 29, 2021—again unsigned by respondent—reflected that respondent had a medical marijuana card, that transportation issues were making it difficult for respondent to make it to her drug screens, that she had positive drug screens for THC, that a court order required three negative drug screens to continue visitations, and that one goal was for respondent to parent LO "without using substances."

On March 17, 2022, the trial court conducted another dispositional review hearing. A caseworker provided the sole testimony at the hearing. She testified that 11 of respondent's last 18 drug screens were positive for THC. The caseworker noted that "[t]here has been some discrepancy on whether or not it's okay for [respondent] to smoke due to having the marijuana card." She indicated that respondent's attorney had insisted that respondent's use of marijuana could not be used against her with respect to parenting time. But the caseworker acknowledged that the court orders dictated otherwise, providing that visits could not resume unless respondent had three straight negative drug screens. The caseworker testified that respondent takes Abilify for mental-health issues. And the caseworker did not know whether taking Abilify while using marijuana has negative health consequences. The caseworker further testified that respondent had "several suspended parenting times due to the positive screens." She stated that when parenting time did take place, respondent did "really well with [LO]." The caseworker explained that respondent was conscientious of safety issues, that she had appropriate toys, that her house was clean, and that respondent was prepared with blankets, snacks, and other foods. She additionally testified that she had not witnessed any marijuana-related behavior by respondent that posed an unreasonable danger or risk to LO. The caseworker claimed that respondent did not smoke or use marijuana on the days that she had parenting time. The caseworker testified that respondent was exercising parenting time twice a week at her home for one-hour supervised periods, except when parenting time was suspended for positive drug screens.

At the hearing, counsel for respondent argued that the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.*, allowed respondent to use marijuana without losing visitation rights unless the use created an unreasonable danger to the child. The guardian ad litem (GAL) believed that there should be no exception and "zero tolerance" for marijuana use relative to the drug screens even if respondent could legally use marijuana. The GAL noted that alcohol is legal, yet the courts routinely require parents of wards to abstain from drinking alcohol. And the GAL was concerned about the lack of information regarding the use of Abilify and marijuana at the same time. The prosecutor opined that an updated psychological assessment should be ordered, noting that the last evaluation indicated that respondent had admitted to using marijuana for the duration of her pregnancy to help with nausea.

The trial court acknowledged the MMMA argument, but it stated that there had been appellate opinions affirming the termination of parental rights where marijuana use had been prohibited and the parental rights were terminated because of such use. The court ruled that respondent was prohibited from using marijuana until she could provide proof that the use of marijuana was actually beneficial to her health. The trial court next voiced concerns about the psychological effect of taking the prescription drug Abilify while using marijuana. The court emphasized that medical answers were needed before respondent could be permitted to use marijuana. The court also ordered an updated psychological evaluation. The trial court ruled that respondent could have supervised visitations with LO and possibly unsupervised parenting time if appropriate and approved by the DHHS. The order entered by the court was consistent with the rulings from the bench. The order also provided for continued drug screens and that a positive screen would result in the suspension of parenting time until three consecutive clean drug screens were submitted.[4]

On June 7, 2022, respondent underwent a drug screen and tested positive for THC. An updated children's foster care court report prepared by a foster care specialist and dated June 8, 2022, indicated that respondent "continue[d] to screen when requested" and that it was recommended that respondent's parenting time "be supervised/unsupervised at the discretion of the department." On June 16, 2022, a dispositional review hearing was conducted. The caseworker testified that in April and May 2022, respondent had some positive drug screens for THC, some no-shows for scheduled screens, and some negative drug screens. Respondent's parenting time was currently suspended due to marijuana use, and the caseworker conceded that respondent had exercised visitations in the past when parenting time should have been suspended pursuant to court order. The caseworker agreed that respondent had visited LO for 13 out of 26

---

[4] An updated PATP from March 23, 2022, again unsigned by respondent, stated:

> Although [respondent] has a medical marijuana card, she continues to test positive for marijuana. The court has stated [respondent] must have 3 clean screens, or screens with declining numbers, to be allowed parenting time. [Respondent] must get a paper from the doctor stating how marijuana use is therapeutic for her and how it will interact with the Abilify shot she receives once a month. [Respondent] must also develop a safety plan regarding marijuana use if and when reunification occurs.

scheduled visits during the past quarter, that there should have been fewer visits due to respondent's marijuana-positive and missed drug screens, and that some visits were unsupervised, which should not have been the case in light of violations of the court orders on marijuana use and parenting time. The caseworker testified that respondent had not presented information regarding how Abilify interacts with marijuana, nor had she provided evidence concerning any therapeutic benefits of her use of marijuana.

The caseworker further testified that when respondent exercised parenting time, it went "very well." Visitations took place either at respondent's apartment or at a library. The caseworker stated that she had never observed any behavior by respondent attributable to marijuana use that created or posed an unreasonable risk of danger to LO. She additionally testified:

> [Respondent] is appropriate during parenting times. She is not sleepy, she is not sluggish, she is not incoherent. She's awake, she's alert, she's helping [LO]. She's positive with him.

Respondent's attorney reiterated his past arguments that prohibiting parenting time because of marijuana use violated the MMMA unless it was demonstrated that marijuana use posed an unreasonable danger to the child, which had not been shown in this case. Counsel indicated, however, that respondent intended "to discontinue marijuana use despite her medical marijuana card."

The GAL noted her frustration with respondent's continued use of marijuana and with DHHS's failure to abide by court orders regarding the suspension of parenting time and its decision to allow unsupervised parenting time despite the positive drug screens. The prosecutor expressed similar sentiments.

The trial court again ruled that respondent was prohibited from using marijuana, and it remained concerned about respondent taking Abilify and using marijuana, especially considering that respondent was now being prescribed an additional psychotropic medication. The court also noted that the most recent psychological assessment revealed that respondent had moderate to severe cannabis use disorder and that the psychologist opined that it was preferable that respondent be able to cope and deal with the demands of her life without using cannabis. The court admonished respondent, telling her to "stop the marijuana usage if you want to have reunification here."[5] The trial court also warned that respondent and DHHS workers can be held in contempt of court for failing to obey court orders. The court closed the hearing by emphasizing, again, that respondent needed to stop using marijuana. The order associated with the dispositional hearing provided that random drug screens were to continue, that respondent was prohibited from using drugs, including marijuana, that after respondent had three consecutive clean drugs screens, she could resume supervised parenting time, and that if respondent, should parenting time be resumed, miss or have a positive drug screen, parenting time is to be suspended until three consecutive clean

---

[5] As the court had indicated in earlier proceedings, it stated that it would count "declining numbers on marijuana as being clean screens."

drug screens are submitted. Respondent appeals this order by delayed leave granted. *In re Ott Minor*, unpublished order of the Court of Appeals, entered July 21, 2022 (Docket No. 362073).

## II. ANALYSIS

### A. APPELLATE ARGUMENTS

Respondent, citing MCL 712A.18f(3)(e), MCL 712A.13a(13), and MCR 3.965(C)(7)(a), argues that Michigan law provides that a parent who has lost temporary custody of his or her child to the foster care system has the right to parenting time unless a court finds that visitation would be harmful to the child. Respondent further contends that the MMMA, and specifically MCL 333.26424(d), along with MCL 333.27955(3), which is a provision in the Michigan Regulation and Taxation of Marijuana Act (MRTMA), MCL 333.27951, provide that visitation cannot be denied on the basis of marijuana use unless the behavior creates an unreasonable danger to a child that can be articulated and substantiated. Respondent maintains that in the instant case there was no evidence or finding that her marijuana use posed a risk of harm or an unreasonable danger to LO. Therefore, according to respondent, the trial court erred by denying her parenting time in response to her positive drug screens for THC and by ordering that she could only resume visitations following three consecutive clean drug screens. Respondent argues that it was improper to connect parenting time to her marijuana use absent a determination that the marijuana usage created a danger to LO's well-being. In sum, respondent asserts that the court's actions in automatically suspending parenting time without any evidence of potential harm to LO plainly violated Michigan law.

### B. STANDARD OF REVIEW AND PRINCIPLES REGARDING THE CONSTRUCTION OF STATUTES AND COURT RULES

We review de novo the interpretation and application of statutes and court rules. *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014). De novo review means that we do not extend any deference to the trial court. *Washington v Washington*, 283 Mich App 667, 671; 770 NW2d 908 (2009).

In *Whitman v City of Burton*, 493 Mich 303, 311-312; 831 NW2d 223 (2013), our Supreme Court articulated the principles that govern the interpretation of a statute:

> When interpreting a statute, we follow the established rules of statutory construction, the foremost of which is to discern and give effect to the intent of the Legislature. To do so, we begin by examining the most reliable evidence of that intent, the language of the statute itself. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. Effect should be given to every phrase, clause, and word in the statute and, whenever possible, no word should be treated as surplusage or rendered nugatory. Only when an ambiguity exists in the language of the statute is it proper for a court to go beyond the statutory text to ascertain legislative intent. [Citations omitted.]

With respect to the interpretation of the MMMA, our Supreme Court in *People v Hartwick*, 498 Mich 192, 209-210; 870 NW2d 37 (2015), explained:

> The MMMA was passed into law by initiative. We must therefore determine the intent of the electorate in approving the MMMA, rather than the intent of the Legislature. Our interpretation is ultimately drawn from the plain language of the statute, which provides the most reliable evidence of the electors' intent. But as with other initiatives, we place special emphasis on the duty of judicial restraint. Particularly, we make no judgment as to the wisdom of the medical use of marijuana in Michigan. This state's electors have made that determination for us. To that end, we do not attempt to limit or extend the statute's words. We merely bring them meaning derived from the plain language of the statute. [Quotation marks and citations omitted.]

In regard to the MRTMA, it "shall be broadly construed to accomplish its intent as stated in [MCL 333.27952]."[6] MCL 333.27967.

This Court construes court rules using the same principles that apply to the interpretation of statutory provisions. *In re Mota*, 334 Mich App 300, 311; 964 NW2d 881 (2020). "Court rules should be interpreted to effect the intent of the drafter, the Michigan Supreme Court." *Id.* (quotation marks and citation omitted). Language contained in a court rule that is clear and unambiguous must be given its plain meaning and is enforced as written. *Id.*

## C. DISCUSSION AND RESOLUTION

We begin with the court rule provision cited by respondent, MCR 3.965(C)(7)(a), which provides, in pertinent part, that "[u]nless the court suspends parenting time pursuant to MCL

---

[6] MCL 333.27952 provides:

> The purpose of this act is to make marihuana legal under state and local law for adults 21 years of age or older, to make industrial hemp legal under state and local law, and to control the commercial production and distribution of marihuana under a system that licenses, regulates, and taxes the businesses involved. The intent is to prevent arrest and penalty for personal possession and cultivation of marihuana by adults 21 years of age or older; remove the commercial production and distribution of marihuana from the illicit market; prevent revenue generated from commerce in marihuana from going to criminal enterprises or gangs; prevent the distribution of marihuana to persons under 21 years of age; prevent the diversion of marihuana to illicit markets; ensure the safety of marihuana and marihuana-infused products; and ensure security of marihuana establishments. To the fullest extent possible, this act shall be interpreted in accordance with the purpose and intent set forth in this section.

-7-

712A.19b(4),[7] . . . the court must permit each parent frequent parenting time with a child in placement unless parenting time, even if supervised, may be harmful to the child." In general, MCR 3.965 concerns preliminary hearings, and Subrule (C) addresses pretrial placement. In *In re Laster*, 303 Mich App 485, 488; 845 NW2d 540 (2013), this Court held that MCR 3.965(C)(7)(a) "only govern[s] parenting time from the preliminary hearing to adjudication" and is not "applicable once adjudication occurs[.]" In this case, we are focused on post-adjudication dispositional orders regarding marijuana use and parenting time; consequently, MCR 3.965(C)(7)(a) has no relevance to this appeal.

Respondent also relies on MCL 712A.13a(13), which is tied to custody and placement orders after removal, and it currently provides as follows:

> If a juvenile is removed from the parent's custody at any time, the court shall permit the juvenile's parent to have regular and frequent parenting time with the juvenile. Parenting time between the juvenile and his or her parent must not be less than 1 time every 7 days unless the court determines either that exigent circumstances require less frequent parenting time or that parenting time, even if supervised, may be harmful to the juvenile's life, physical health, or mental well-being. . . . . [See 2022 PA 200 and 2016 PA 191.]

The *Laster* panel ruled that MCL 712A.13a(13), as with MCR 3.965(C)(7)(a), "only govern[s] parenting time from the preliminary hearing to adjudication" and is not "applicable once adjudication occurs[.]" *Laster*, 303 Mich App at 488. But *Laster* construed an earlier version of MCL 712A.13a(13). See *id.*; 2012 PA 163. The opening sentence of MCL 712A.13a(13), when *Laster* was decided, stated that "[i]f a juvenile is removed from his or her home, the court shall permit the juvenile's parent to have frequent parenting time with the juvenile." *Laster*, 303 Mich App at 488; 2012 PA 163. As reflected above, the first sentence of MCL 712A.13a(13) now provides that "[i]f a juvenile is removed from the parent's custody *at any time*, the court shall permit the juvenile's parent to have regular and frequent parenting time with the juvenile." See 2022 PA 200; 2016 PA 191 (emphasis added). Removal of a child from the custody of his or her parent can occur following adjudication and the court's exercise of jurisdiction. See MCR 3.974.[8] Therefore, with the addition of the "at any time" language, the Legislature plainly intended for MCL 712A.13a(13) to apply before and after adjudication. Accordingly, even after adjudication takes place, a parent is entitled to parenting time with a removed child unless it "may be harmful

---

[7] MCL 712A.19b(4) allows a court to suspend parenting time if a petition to terminate parental rights has been filed. In this case, no petition to terminate parental rights had been filed. Instead, reunification remained the goal as of the filing of the appeal.

[8] MCR 3.974(A)(1) provides that "[t]he court shall periodically review the progress of a child not in foster care over whom it has taken jurisdiction." And MCR 3.974(B)(2) states that "[i]f a child is under the jurisdiction of the court and a supplemental petition has been filed to remove the child from the home, the court shall conduct a hearing on the petition."

to the juvenile's life, physical health, or mental well-being." MCL 712A.13a(13).[9] We hold that the interpretation of MCL 712A.13a(13) enunciated in *Laster* no longer governs in light of the legislative amendment of the statutory provision. We shall, however, proceed with an examination of other statutory provisions.

In support of her position, respondent additionally cites MCL 712A.18f(3)(e), which provides that a case service plan must include, except as otherwise provided in the statute, "a schedule for regular and frequent parenting time between the child and his or her parent[,]" but not when "parenting time, even if supervised, would be harmful to the child as determined by the court . . . ." But this Court in *Laster* limited the reach of MCL 712A.18f(3)(e), holding as follows:

> It is clear from the statutory language that the[] provision[] only govern[s] the agency and what parenting time recommendations the case service plan must include following adjudication; they do not govern the trial court's authority to enter orders regarding parenting time following adjudication. In the absence of a court rule or statute, the issue of the amount, if any, and conditions of parenting time following adjudication and before the filing of a petition to terminate parental rights is left to the sound discretion of the trial court and is to be decided in the best interests of the child. No finding of harm is required, although such a finding is usually implicit in the court's decision. [*Laster*, 330 Mich App at 490.]

Accordingly, MCL 712A.18f(3)(e), as interpreted by the *Laster* panel, does not support respondent's position in this case.

The Court in *Laster*, 303 Mich App at 489, observed that "[t]here is . . . no court rule governing parenting time between adjudication and the filing of a termination petition." We have now ruled that MCL 712A.13a(13) applies post-adjudication given the Legislature's amendment of that provision. Moreover, in 2016, after *Laster* was decided, the Legislature added subsection (1)(n) to MCL 712A.18. See 2016 PA 191. And 712A.18(1)(n) was subsequently renumbered as MCL 712A.18(1)(p). See 2020 PA 389  MCL 712A.18(1)(p) provides:

> (1) If the court finds that a juvenile concerning whom a petition is filed is not within this chapter, the court shall enter an order dismissing the petition. Except as otherwise provided in subsection (10), if the court finds that a juvenile is within this chapter, the court shall order the juvenile returned to his or her parent if the return of the juvenile to his or her parent would not cause a substantial risk of harm to the juvenile or society. *The court may also enter any of the following orders of disposition that are appropriate for the welfare of the juvenile and society in view of the facts proven and ascertained*:

> \* \* \*

---

[9] MCL 712A.13a(13) also refers to "exigent circumstances" as being a basis to order less frequent parenting time, but respondent does not focus on this language.

(p) In a proceeding under section 2(b) or (c) of this chapter, if a juvenile is removed from the parent's custody *at any time*, the court shall permit the juvenile's parent to have regular and frequent parenting time with the juvenile. Parenting time between the juvenile and his or her parent shall not be less than 1 time every 7 days *unless the court determines either that exigent circumstances require less frequent parenting time or that parenting time, even if supervised, may be harmful to the juvenile's life, physical health, or mental well-being. If the court determines that parenting time, even if supervised, may be harmful to the juvenile's life, physical health, or mental well-being, the court may suspend parenting time until the risk of harm no longer exists.* The court may order the juvenile to have a psychological evaluation or counseling, or both, to determine the appropriateness and the conditions of parenting time. [Emphasis added.]

With the enactment of 2016 PA 191, the Legislature not only added the above-quoted language to MCL 712A.18, as tweaked by some subsequent minor amendments, but it also amended MCL 712A.13a(13) using similar language as discussed earlier. In our view, this makes it abundantly clear that even following adjudication, a parent has a statutory right to parenting time unless it may be harmful to the child's life, physical health, or mental well-being.

With respect to the MMMA, MCL 333.26424(d) provides that "[a] person shall not be denied custody or visitation of a minor for acting in accordance with this act, unless the person's behavior is such that it creates an unreasonable danger to the minor that can be clearly articulated and substantiated." In regard to the MRTMA, MCL 333.27955(3) similarly states that "[a] person shall not be denied custody of or visitation with a minor for conduct that is permitted by this act, unless the person's behavior is such that it creates an unreasonable danger to the minor that can be clearly articulated and substantiated." These provisions, MCL 333.26424(d) and MCL 333.27955(3), plainly apply to domestic relations actions. And this Court has recognized the application of MCL 333.26424(d) in the context of child protective proceedings. See *In re Richardson*, 329 Mich App 232, 247-248; 961 NW2d 499 (2019).[10] We see no reason why the MRTMA would not also apply to child protective proceedings. The legal concept of "visitation"

---

[10] In *Richardson*, 329 Mich App at 247, a parental termination case, this Court ruled:

With respect to the referee's ruling on mother's use of medical marijuana at the conclusion of the evidentiary hearing on the matter, the referee found that the doctors did not make it clear that medical marijuana "is what is medically necessary." However, there is no medical authority cited in the record to support this conclusion. Additionally, this ruling runs contrary to the . . . MMMA[], . . . which states, in relevant part, "[A] person shall not be denied custody or visitation of a minor for acting in accordance with act, unless the person's behavior is such that it creates an unreasonable danger to the minor that can be clearly articulated and substantiated." MCL 333.26424(d).

with a "minor" certainly has meaning, relevance, and application in a child protective proceeding, as well as in a domestic relations action.

In sum, we conclude that MCL 712A.13a(13), MCL 712A.18(1)(p), MCL 333.26424(d), and MCL 333.27955(3) needed to be taken into consideration before respondent's parenting time was suspended. An automatic suspension of parenting time for a positive drug screen for THC absent any examination of and determination under these statutory provisions is invalid. Respondent's use of marijuana did not justify the denial of her parenting time with LO unless the court determined that as a result of her marijuana use, parenting time, even if supervised, may have been harmful to LO's life, physical health, or mental well-being. MCL 712A.13a(13); MCL 712A.18(1)(p).[11] Such a determination was not made in this case at any point in time; therefore, the orders suspending respondent's parenting time for THC-positive drug screens and requiring three consecutive negative drug screens before parenting time could resume were patently invalid.[12]

Furthermore, for purposes of the MMMA and the MRTMA, respondent's use of marijuana did not justify the denial of her parenting time with LO unless the court determined that she did not act in accordance with the MMMA or the MRTMA, or unless the court determined that as a result of her marijuana use, it created an unreasonable danger to LO that was clearly articulated and substantiated. MCL 333.26424(d); MCL 333.27955(3). This analysis was not undertaken in the lower court.

In light of our rulings, we hold that it is necessary to reverse and remand the case for compliance with MCL 712A.13a(13), MCL 712A.18(1)(p), MCL 333.26424(d), and MCL 333.27955(3).

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher
/s/ Michelle M. Rick

---

[11] Our analysis under MCL 712A.13a(13) and MCL 712A.18(1)(p) applies to the suspension of parenting time for positive drug screens regardless of whether marijuana is involved or some other drug.

[12] With respect to missed drug screens, which are ordinarily treated as positive screens, the same determinations must be made.