*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* OWENS, Minors.

UNPUBLISHED
February 18, 2026
11:52 AM

Nos. 375167; 375168
Wayne Circuit Court
Family Division
LC No. 2022-001317-NA

Before: BORRELLO, P.J., and MARIANI and TREBILCOCK, JJ.

PER CURIAM.

Respondents appeal from the trial court's orders terminating their parental rights to their minor children, NO and CO, based on substantiated allegations of child abuse. They assert three claims of error: the reasonable-efforts determination, the suspension of parenting time, and the best-interest determination. We affirm.

## I. DHHS'S UNTIMELY BRIEF

Before turning to the merits of respondents' appeal, we open by expressing our disappointment with the timing of the Department of Health and Human Service's (DHHS) brief filed in this matter. The State charged in this case that respondents were not capable of rearing their two children and successfully convinced the lower court that it met its statutory burden to terminate respondents' parental rights. We expect that in all matters—and especially in ones so serious as permanently removing the right to raise a biological child—that the State will timely devote resources to defending a lower court judgment it desires to enforce. The State's efforts here leave a lot to be desired.

Respondents appealed from the trial court's order and filed their appellate brief on June 13, 2025. The children's Lawyer-Guardian Ad Litem promptly filed an appellee brief on July 7, 2025. On December 4, 2025, this Court notified the parties that the matter would be submitted to our January 13, 2026 case call.

-1-

For reasons unknown to us,[1] DHHS's attorney filed DHHS's appellee brief the day before our argument at 3:10 pm.[2] That is 213 days after respondents filed their appellate brief. We recognize DHHS was not obligated to file an appellee brief, *cf People v Smith*, 439 Mich 954, 954 (1992), but not doing so risks a decision issued on the merits without the benefit of adversarial briefing, see *People v Hatfield*, 46 Mich App 149, 151; 207 NW2d 485 (1973). There are of course many understandable reasons for delayed filings. The consequences of doing so, however, affect oral argument preparation and, in this case, the ability to file a reply brief before oral argument. We thus emphasize our desire that parties timely file briefs to best aid in our consideration of every case before us.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Respondents have two girls, NO and CO. In 2022, then seven-year-old NO was found walking alone next to Joy Road in Detroit. She was taken to a hospital, where a medical examination showed significant signs of physical abuse. A subsequent medical exam on NO's younger sister CO occurred. Both children had numerous loop marks on their extremities, backs, and buttocks that were in various stages of healing, each of which were "consistent with being struck with a flexible object on numerous occasions." Each child identified respondent-father as the cause of their injuries.

Respondent-father admitted that he hit NO with a belt 16 times, asserting the children were spoiled and bruised easily, and respondent-mother acknowledged her awareness of respondent-father's "discipline." In a forensic interview, NO explained that both her father and mother "whooped" her every month, using a belt and a cord. The last time she was "whooped," respondent-mother "hit her with a belt twenty to forty times," before respondent-father "hit her with the cord about ten times." NO jumped out of a window afterwards.

Petitioner DHHS filed a petition seeking termination of respondents' parental rights at the initial disposition. The trial court authorized the petition and allowed respondents supervised parenting time. Respondents waived their right to a trial and agreed to the trial court admitting the DHHS investigation report to establish the factual basis for jurisdiction. The trial court read the abuse allegations into the record, and found statutory grounds existed to terminate respondent–

---

[1] The Court Rules provide parties with *some* flexibility with filing deadlines. Here, MCR 7.212(A)(2)(a)(i) required DHHS to file its brief within 21 days of service of appellants' brief, but permits this Court to extend that deadline "on motion." That is for good reason—deadlines ensure timely processing of cases, while the ability to extend deadlines recognizes that good cause often exists to accommodate other scheduling considerations. DHHS did not comply with this Court Rule. Because the Clerk's Office nonetheless accepted the brief for filing, we will consider the brief as appropriately filed.

[2] We also note that DHHS filed tardy briefs in two other cases before this panel's January 2026 case call. In *In re Carter/Martin/Waller/Hunt* Minors, No. 373677, DHHS filed an appellee brief on the day of argument at 4:16 pm (i.e., after the case was submitted), and filed an appellee brief the day before argument in *In re Grace Minors*, No. 369630.

mother's parental rights under MCL 712A.19b(3)(b), (g), (j), and (k), and to terminate respondent-father's parental rights under MCL 712A.19b(3)(a), (b), (g), (j), and (k).

Parenting-time issues abounded during the proceedings. Caseworker Anna Magner testified that respondent-father was controlling and repeatedly acted inappropriately at parenting time, whispering things to the children to prevent Magner from hearing. He also, for example, instructed NO to say she wanted to go home during one of parenting-time sessions. When Magner ended parenting time, respondents yelled at Magner and refused to leave, which resulted in law-enforcement intervention. The children understandably cried, and were very anxious after this incident. Other notable incidents included respondent-father giving NO a journal to "record everything" and telling NO that they would not visit her because a caseworker would not give them another gas card.

DHHS moved to suspend respondents' parenting time, asserting trauma assessments showed that NO was struggling with her self-esteem because respondent-father repeatedly told her it was her fault the children were in foster care and that CO suffered from frequent nightmares and bedwetting, and banged her head against objects. Both children were diagnosed with trauma disorders and sleep-related issues, but respondents refused to consent to the children taking prescribed medication. Magner testified parenting time retraumatized the children—they would discuss the abuse they suffered afterward, and rocked and banged their heads. The trial court found parenting time was harmful to the children's mental well-being and suspended respondents' parenting time.

Ultimately, the trial court terminated their parental rights under MCL 712A.19(b)(3)(a) (parent deserted the child), (b) (child or sibling suffered physical injury or abuse under enumerated circumstances, and there is a reasonable likelihood of abuse if the child is placed with the parent), (g) (failure to provide proper care and custody), (j) (reasonable likelihood the child will be harmed if returned to the parent), and (k) (parent abused the child, or the child's sibling, under enumerated circumstances, and there is a reasonable likelihood of abuse if the child is placed with the parent). This appeal followed.

## III. REASONABLE EFFORTS

Respondents first argue the trial court wrongly concluded DHHS made reasonable efforts toward reunification because respondents were not provided services, despite not meeting any of the statutory exceptions relieving DHHS of this obligation. On clear error review of the trial court's factual findings regarding reasonable efforts toward reunification, *In re Atchley*, 341 Mich App 332, 338; 990 NW2d 685 (2022), we disagree.

Generally, "[DHHS] has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). "As part of these reasonable efforts, [DHHS] must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id*. at 85-86. However, "MCL 712A.19a(2) contains an exclusive list of the exceptions to DHHS's duty to make reasonable efforts toward reunification." *In re Walters*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369318); slip op at 1. As pertinent here, subsection (a) provides that reasonable efforts toward reunification are not required if

"[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in . . . MCL 722.638." MCL 712A.19a(2)(a). "Child abuse"—and specifically "battering, torture or other serious physical harm"—is one such aggravated circumstance. See MCL 722.638(1)(a)(*iii*).

DHHS sought termination of respondents' parental rights at the initial disposition under MCL 712A.19b(3)(k)(*iii*) for child abuse. The termination petition alleged respondents used a belt and a cord to whip the children on multiple occasions, with respondent-father admitting he most recently struck NO with a belt 16 times. Medical examinations revealed both children had numerous loop marks on their bodies in various stages of healing, along with long-lasting scars. Respondents pleaded no contest to these allegations, agreeing to their use for establishing the factual basis of their pleas. See, e.g., *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011) (a no contest plea becomes "evidence in the case"). The trial court then found proven statutory grounds for termination under MCL 712A.19b(3)(k)(*iii*), which amounts to a "judicial determination" that respondents subjected the children to an aggravated circumstance under MCL 722.638(1)(a)(*iii*). See *In re Rippy*, 330 Mich App 350, 358; 948 NW2d 131 (2019). Thus, DHHS was not required to make reasonable efforts toward reunification under MCL 712A.19a(2)(a).

And even if it was, the trial court did not clearly err in finding DHHS engaged in reasonable efforts aimed at reunification. Despite concluding that reasonable efforts were not required, the trial court repeatedly ordered DHHS to provide services at respondents' request; Magner testified that she would have provided service referrals, but respondents never asked. When respondents expressed concerns regarding transportation to parenting time, they were provided with gas cards, offered bus passes, and given the location of every free charging location in the area (at that point, respondents had an electric car). Magner explained to respondent-father that his therapist was not acceptable according to DHHS standards and offered to refer him to an approved therapist, but respondent-father refused her offer. The trial court's finding that reasonable efforts were made was not clearly erroneous.

Relatedly, respondent-father argues DHHS owed him a heightened duty to make reasonable efforts toward reunification because of his mental health issues, which are a recognized disability under the Americans with Disabilities Act (ADA), 42 USC 12101, *et seq*. The ADA requires DHHS to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless . . . the modifications would fundamentally alter . . . the service provided." *In re Sanborn*, 337 Mich App 252, 263; 976 NW2d 44 (2021). "Absent reasonable modifications to the services or programs offered to a disabled parent, [DHHS] has failed in its duty under the ADA to reasonably accommodate a disability." *In re Hicks/Brown*, 500 Mich at 86. But as discussed, DHHS was not required to offer services to respondent-father, and regardless, any claim that one's rights under the ADA are violated must be raised in a timely manner. *In re Terry*, 240 Mich App 14, 26; 610 NW2d 563 (2000). Respondent-father never asserted below that he needed ADA accommodations, and when a respondent does not argue in the trial court that petitioner failed to comply with the ADA, his "sole remedy is to commence a separate action for discrimination under the ADA." *Id*.

## IV. PARENTING TIME

Respondents next challenge the evidence supporting the trial court's suspension of their parenting time under MCL 712A.13a(13). We see no abuse of discretion in that determination. See *In re Laster*, 303 Mich App 485, 490-491; 845 NW2d 540 (2013).

A parent is generally entitled to in-person parenting time with their children after removal, but not if a trial court finds parenting time would be harmful to the child's life, physical health, or mental well-being. See *In re Ott*, 344 Mich App 723, 737-743; 2 NW3d 120 (2022); see also MCR 3.965(C)(7); MCL 712A.13a(13). Here, the trial court suspended parenting time, finding the children were afraid of respondent-father, and parenting time revictimized the children because it reminded them of the abuse they suffered. And the record well supports that decision—after parenting time, the children were extremely anxious, would rock and bang their heads, and had trouble sleeping. Moreover, respondents did not listen to the foster-care workers, distressed the children, and acted in a manner that resulted in law enforcement's involvement. We discern no abuse of discretion.[3]

## V. BEST INTERESTS

Finally, respondents argue the trial court erred in determining termination was in the children's best interests. This Court reviews a trial court's best-interest determination for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). We do not agree that the trial court's termination decision here represents clear error requiring reversal.

"The trial court must order the parent's rights terminated if [DHHS] has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the child[]'s best interests." *In re White*, 303 Mich App at 713. "The trial court should weigh all the evidence available to determine the child[]'s best interests." *Id*. This Court focuses on the child—not the parent—when reviewing best interests. *In re Atchley*, 341 Mich App at 346. In so doing, "the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App at 713-714 (quotation marks and citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the child[]'s well-being while in care, and the possibility of adoption." *Id*.

---

[3] We also note the trial court had discretion to suspend parenting time without making any findings of harm. "If a petition to terminate parental rights to a child is filed, the court may suspend parenting time for a parent who is a subject of the petition." MCL 712A.19b(4); MCR 3.977(D). Because DHHS filed a petition to terminate respondents' parental rights at the initial disposition, respondents were subject to the pending termination petition when their parenting time was suspended, and accordingly, under MCL 712A.19b(4), the trial court needed no justification to suspend parenting time. See also *In re Ott*, 344 Mich App at 737 & n 7.

On appeal, respondents mainly argue that the children's current foster-care placement did not provide permanency and stability because the children had been in six foster placements throughout the proceedings and that the children were bonded with respondents. True, these facts weigh in their favor, but the evidence also supports the trial court's more-than-appropriate conclusion that respondents traumatized their children: the children demonstrated significant distress after parenting times, which improved after suspension of parenting time. Further, respondents were unable to provide stability and permanency for the children. The children were diagnosed with trauma-related sleep issues, yet respondents refused to authorize the children taking their prescribed medication for these diagnoses, and refused to acknowledge the trauma the children suffered in their care. Respondent-father asserts he completed parenting classes and has taken responsibility; however, through two years of counseling, respondent-father never told his counselors the children were removed because of his physical abuse. Respondent-father repeatedly told NO it was her fault the children were removed, and respondent-mother followed his lead. Respondents never provided evidence of their housing or employment throughout these proceedings, and by the time of the last hearing, the children had been in their current placement for about a year and were doing well. The foster parent wanted to adopt the children and would continue their therapy, which the trial court found would be needed to recover from respondents' abuse. On these facts, the trial court did not clearly err by finding termination of respondents' parental rights was in the children's best interests.

## VI. CONCLUSION

For these reasons, we affirm the trial court's judgments.

/s/ Stephen L. Borrello
/s/ Philip P. Mariani
/s/ Christopher M. Trebilcock

-6-